DOMENGEAUX, Chief Judge.
Ernestine A. Poole filed suit to revoke a donation inter vivos that she executed in favor of defendant, Calline Ward Norris. After trial on the merits, the district judge found Mrs. Poole’s consent to the “donation” was given under duress. Mrs. Ward now. appeals. The facts of this case are thoroughly detailed in the trial court’s written reasons for judgment, which we attach as an appendix and which we adopt as our own, with the following brief introduction.
On February 5, 1987, Ernestine Poole executed a document in which she purported to donate an undivided 3/iths interest in two certificates of deposit to Calline Ward Norris. The parties estimated the value of the donated property to be $42,000.00.
The two certificates of deposit were bequeathed as a particular legacy to Mrs. Poole in two handwritten codicils to the statutory will of Mrs. Poole’s aunt, Mrs. Mae Chapman Andrews. Mrs. Andrews died on October 3, 1986. In her original statutory will, Mrs. Andrews provided that this money was to be divided equally among Casey Dotson, Cory Dotson and the defendant, Calline Ward Norris, who are the three children of Ray and Diane Dotson.
On the same day, Mrs. Poole, Mrs. Dotson and Mrs. Norris executed a “counter letter” in which Mrs. Dotson and Mrs. Norris agreed not to contest the succession proceedings of Mrs. Andrews and in which Mrs. Poole agreed not to accept any payment for her services as succession executrix.
The trial judge construed the donation and the counter letter together, concluding the two documents were actually a compromise. He then found Mrs. Poole’s consent to the compromise was not freely given. He found that harassment from Mrs. Dotson, on almost a daily basis, at a time when Mrs. Poole suffered from various physical infirmities and experienced personal tragedies amounted to duress under La. C.C. art. 1959.
La.C.C. art. 1959 provides:
Consent is vitiated when it has been obtained by duress of such a nature as to cause a reasonable fear of unjust and considerable injury to a party’s person, property, or reputation.
Age, health, disposition, and other personal circumstances of a party must be taken into account in determining the reasonableness of the fear.
A trial judge is given much discretion in resolving an issue of this nature., Dunham v. Anderson-Dunham, Inc., 466 So.2d 1317 (La.App. 1st Cir.1985), writ denied, 472 So.2d 29 (La.1985). From a reading of the appendix, it is evident the trial judge was impressed with the testimony of Mrs. Poole. He alone had the opportunity to evaluate her credibility and to assess her health, disposition and other personal circumstances, as required by the second paragraph of article 1959.
The court in Dunham found a corporate officer’s consent to a consulting contract was vitiated by “duress of the circum *1091 stances” sufficient to invalidate the contract under former Civil Code articles 1850 and 1851. Former article 1850 provided consent to a contract was void, if it was produced by “violence or threats.” The officer in Dunham admitted he was not physically threatened, nor was his job on the line, when he signed the contract. He testified he resisted signing the contract for about one hour after it was presented to him and he would not have signed it “but for the continued insistence” of the corporation’s majority shareholder and the beneficiary of the contract.
In the instant matter, the trial court found the continuing demands upon Mrs. Poole to execute the “donation” by Diane Dotson and her daughter, the defendant, combined with Mrs. Poole’s medical problems and personal tragedies, were sufficient to invalidate the contract under La. C.C. art. 1959. After reviewing the record, we find no error in the trial court’s findings of fact, nor in his application of the law, particularly in light of the Dunham decision.
The judgment of the trial court in favor of Ernestine A. Poole is affirmed.
AFFIRMED.
APPENDIX
28th Judicial District Court
Jena, Louisiana
REASONS FOR JUDGMENT
In this action, Ernestine A. Poole seeks judicial revocation of a Donation Inter Vi-vos signed by her on February 5, 1987. Named as defendant is Calline Ward, the donee of that instrument.
The property purported to be donated was described as follows:
An undivided 3Aths interest in Certificates of Deposit No. 4867548 and 4855469 after deduction of all inheritance taxes actually paid for and on behalf of the Certificates of Deposit.
These certificates originated as the property of the estate of Mae Chapman Andrews who died on October 3, 1986 in LaSalle Parish, Louisiana.
Succession proceedings were opened on Mae Chapman Andrews in the 28th Judicial District Court on October 8, 1986, in the matter entitled In Re: Succession of Mae Chapman Andrews, Deceased, Docket No. 22538, Probate No. 003903, of the records of LaSalle Parish, Louisiana. A Detailed Descriptive List filed on May 29, 1987, indicated that Mae Chapman Andrews died possessed of five separate tracts of immovable property valued at $30,000.00, and the following items of movable property:
(1) Certificate of Deposit No. 4855469 issued by the Bank of Jena, Jena, Louisiana in the amount of $ 3,972.82
(2) Certificate of Deposit No. 5867548 issued by the Bank of Jena, Jena, Louisiana valued at $54,000.00
(3) Savings Account No. 259-882-5 issued by the Bank of Jena, Jena, Louisiana $ 32.75
(4) Checking Account at the Bank of Jena, Jena, Louisiana $ 3,555.14
(5) 1970 Mercury Monteray automobile valued at $ 1,500.00
(6) Miscellaneous household goods and effects valued at $ 1,000.00
Total $64,060.71
This created a gross estate of $94,060.71. Succession debts were listed in this Detailed Descriptive List at $6,680.50 thereby leaving a net estate of $87,380.21.
Mae Chapman Andrews left an original Last Will and Testament in statutory form, a codicil to the Last Will and Testament in statutory form, and two hand written codicils to the will in olographic form. All of these were submitted to the court for probate on the 24th day of November, 1986. In the original statutory will, which was executed on October 10, 1983, Mae Chapman Andrews left a usufruct over her house and six and one-half acres in the Town of Jena to Ray Dotson and his wife, Diane Dotson. The naked ownership of the northern most three and one-fourth acres of this six and one-half acre tract was left to Calline Ward, the child of Ray and Diane Dotson. The southern most three and one-quarter acres of this six and one-half acre tract was left to Casey Dotson and Cory *1092 Dotson, children of Ray and Diane Dotson. All of the money in a savings account in the Bank of Jena in the name of Mae C. Andrews and Ernestine Poole was left to Ernestine Poole, out of which all funeral charges were to be paid first. The remainder of the property was left to Calline Ward, Casey Dotson, and Cory Dotson, in equal proportions. Diane Dotson was appointed as Executrix of this Last Will and Testament.
A codicil to this Last Will and Testament was executed on December 2, 1985, by Mae Chapman Andrews whereby Ernestine Poole was appointed as Executrix. A second hand written codicil dated September 28, 1986, simply states the following:
I Feel I Need to change my Will I am of Sound Mind, I Leave Ernestine Poole all money, in my account C.D.s and Bank Box—
An additional hand written codicil dated September 28, 1986 purportedly signed by Mae C. Andrews was also presented to the court, the text of which reads as follows:
I Feel I Need To Change my Will I am of Sound Mind, I Leave Ernestine Poole my money and my CD in my bank box
The original will and the three codicils were probated by the court on November 24, 1986.
On February 5, 1987, Ernestine A. Poole appeared in the office of Jack F. Owens, Attorney at Law and Notary Public, of Catahoula Parish, Louisiana, and executed two documents. The first is identified as a Donation Inter Vivos wherein she gratuitously donated to Calline Ward the property heretofore described. The donation suggests that this property had a value of $42,000.00, not including accrued interest. Calline Ward executed the document as donee and it was witnessed and notarized in the office of Jack F. Owens, Jr. At the same time, Ernestine A. Poole executed a counter letter, to which Calline Ward and Diane Dotson were also parties, which established different terms of the purported Donation Inter Vivos:
(1) Calline Ward and Diane Dotson hereby agree not to file any suits in the succession proceedings of Mae C. Andrews; and sign and accept a judgment of possession.
(2) Ernestine A. Poole, in return, agrees that she will not request nor accept any payment for her services as Executrix of the Succession of Mae C. Andrews.
On May 29, 1987, the court was submitted a Petition for Possession which conformed to the probated documents in the succession, and which made no mention of the Donation Inter Vivos nor the Counter Letter. In this petition, Ernestine Poole alleged that there was no necessity for an administration of the succession and waived her right to be appointed as Executrix. At this same time the Detailed Descriptive List was filed. On the same day, the court was presented with a Judgment of Possession which purported to conform to the mandate of the will and codicils except that it carried the Certificate of Deposit described on the Detailed Descriptive List as No. 5867548 by its correct Number 4867548. Additionally, a further examination of the property descriptions reflects discrepancies in the properties conveyed. Particularly, the property description Number 1 on both the Detailed Descriptive List and the Judgment of Possession speaks of six and one-quarter acres but described a piece of property which is 150 feet by 150 feet, obviously not six and one-quarter acres. Again, in the Judgement of Possession, no mention was made of the Donation Inter Vivos nor the Counter Letter of February 5, 1987.
It should also be noted that attached to the Petition of Possession were executed verifications of that petition by Ray Dotson, Diane Dotson, and Calline Ward.
Shortly after the death of Mae Chapman Andrews, Diane Dotson became aware that neither she nor any member of her family was to receive any of the money left in the Andrews estate because of the hand written codicils. She immediately began to contact Ernestine Poole at her home and office, making demand upon Mrs. Poole to give her and/or her children the money. Although Diane Dotson and Calline Ward indicated in testimony that they had no *1093 hard feelings toward Mrs. Poole it was made very plain to Mrs. Poole that lawsuits would be filed against her personally for these monies.
At the time these contacts were being made, Ernestine Poole had suffered numerous personal tragedies. Mae Chapman Andrews was her aunt to whom she was very close, and she was distraught about this loss. Additionally, her elderly mother had suffered a disabling stroke and her family was having difficulties in making arrangements to care for a younger retarded sister who lived with Mrs. Poole’s mother. In January of 1987, Mrs. Poole learned that she suffers from a progressive kidney disease which will ultimately require a kidney transplant. All of these factors combined with the demands of Diane Dotson caused her to have extreme emotional distress and anxiety.
Even the circumstances under which these documents were executed were such as to prevent Mrs. Poole from having a clear understanding of the consequences thereof. On February 5, 1987, she went to the office of Jack F. Owens, Jr., in Harri-sonburg, Louisiana and arrived late in the afternoon. When she was brought to the office of Mr. Owens, she found that he, his wife, and a friend were drinking beer. The other parties did not leave during the time of her discussion with Owens and the papers were ultimately signed at that meeting. Although this event might not cause others emotional stress, Mrs. Poole has strong religious beliefs against the consumption of alcohol and she was shocked and taken aback by the atmosphere of the attorney’s office.
Mrs. Poole understood that, in return for executing this agreement, neither Diane Dotson nor Calline Ward would contest the will and they would cease harassing her. However, once this document was executed, Diane Dotson began then calling Mrs. Poole to make the money available to her.
It is clear that the transaction of February 5, 1987, did not constitute a donation, but rather a conventional contract.
A contract is an agreement by two or more parties whereby obligations are created, modified, or extinguished.
Louisiana Civil Code Article 1906 Since each of the parties were given obligations under this contract, it can only be construed as a commutative contract.
A contract is commutative when the performance of the obligation of each party is correlative to the performance of the other.
Louisiana Civil Code Article 1911
To effect an agreement as required by Louisiana Civil Code Article 1906, the parties must evidence a consent through offer and acceptance. See Louisiana Civil Code Article 1927. Consent does not exist where there is sufficient duress to preclude true agreement.
Consent is vitiated when it has been obtained by duress of a nature to cause a reasonable fear of unjust and considerable injury to a party’s person, property, or reputation.
Age, health, disposition, and other personal circumstances of a party must be taken into account in determining reasonableness of the fear.
The record of these proceedings establishes that Ernestine A. Poole was under considerable pressure at the time of the execution of the documents in question. She had extremely serious personal medical difficulties, her mother’s health and sister’s well being were constantly on her mind, and she was grieving the loss of her much loved and respected aunt. Added to this was the constant pressure of Diane Dotson and/or Calline Ward to reject the specific wishes of her aunt and divide the money with them and the other Dotson children. A specific example of the effect of this pressure was the fact that Ernestine A. Poole was encouraged not to tell her own lawyer what was going on and she actually succumbed to this encouragement. The actions under which the documents in question were executed further added to her discomfort and distress and it is abundantly clear from the testimony that the documents in question do not even reflect *1094 what was purported to be the agreement between the parties.
Given this factual situation, the court finds the plaintiff is entitled to the relief prayed for, and the Donation Inter Vivos and Counter Letter dated May 5, 1987, are hereby revoked, set aside in full, and declared null and void.
All costs of these proceedings are taxed against Calline Ward. Judgment to this effect will be signed upon appropriate presentation.
THUS DONE AND PASSED in Jena, LaSalle Parish, Louisiana in Chambers this 17th day of April, 1989.
/s/Jimmie C. Peters JIMMIE C. PETERS DISTRICT JUDGE