E. H. WILLIAMSON AND HUSBAND *v.* ALEXANDER AMILTON.

A partition, even when it takes on itself the aspect and quality of a compromise, may be attacked for *lesion* beyond one-fourth, but when the partition is once made and the parties compromise on disputes growing out of it, the compromise is unassailable for *lesion*.

The acceptance by the wife, separated from bed and board of the community, under Article 2389 of the Code need not be by notarial act ; like the heir's acceptance of a succession, it may be either express or tacit.

A PPEAL from the District Court of the Parish of Ouachita, *Richardson*, J.
*J. T. Ludeling*, for plaintiffs and appellants.  *Morrison & Purvis* and *McGuire & Ray*, for defendant.

WILLIAMSON          SPOFFORD, J.  This suit, brought by a divorced wife against her former hus-
    v.          band, has narrowed itself down to a claim for the rescission of a voluntary parti-
AMILTON.        tion between them of the property they formerly held in common, on the ground
of *lesion* only.

There are other objections in the petition which it is unnecessary to notice, as none of the exceptions filed were sufficient to require the dismissal of the suit.

I.  The defendant contends that the act passed between himself and the plaintiff, after the decree of separation and dissolution of the community, was a transaction or compromise, and, therefore, cannot be annulled on the score of *lesion*.

Article 3045 of the Civil Code, declaring that " transactions have, between the interested parties, the authority of the thing adjudged, and cannot be attacked on account of any error in law or any *lesion*," must be construed in connection with other Articles of the Code *in pari materia*, so that all may have their full effect. The following Articles fully sustain the present action, if the allegation of *lesion* beyond one-fourth is proved :

" Partitions made even with persons of full age, may be rescinded, *like other covenants*, for radical vices, such as violence, fraud or error."   C. C. 1435.

" They may even be rescinded on account of *lesion ;* and as equality is the basis of partitions, it suffices to cause the rescission that such *lesion* be of more than one-fourth of the true value of the property."   C. C. 1436.

" The action of rescission mentioned in the foregoing Articles, takes place, in the cases prescribed by law, not only against all acts *bearing the title of partitions*, but, even against all those which *tend to the division of property* between co-heirs, whether such acts be called sales, exchanges, *compromises*, (*transactions*) or by any other name."   C. C. 1440.

" But, after the partition, or the act operating the same effect, the action of res-cission can no longer be admitted against a compromise (*transaction*) made to put an end to disputes *arising in consequence of the first act,* although there should be no suit commenced on the subject."   C. C. 1441.

Here is an evident exception to the rule with regard to the finality of compro-mises.   A partition, even when it takes upon itself the aspect and qualities of a compromise, may be attacked for *lesion* beyond one-fourth ; but the partition once made, if disputes grow out of it, and the parties compromise on those disputes, this compromise is unassailable for *lesion*.

In the present case, the parties, separated in property and from bed and board, under a judgment decreeing that an inventory and appraisement of the common property be made, and that it be partitioned between them, went before a Notary Public and entered into the agreement now sought to be annulled for *lesion*.

It recited, that on the 16th of December, 1854, " a judgment of separation of bed and board, and a dissolution of the community existing between them as hus-band and wife, was duly rendered ; and that with a view of settling the said com-munity and of closing all the pecuniary affairs between them, the said *Mrs. Eliza-beth H. Amilton* takes, and the said *Alexander Amilton* transfers to her, certain described property, " as her part of the said community" ; and " all the balance of said community property is to belong to said *Alexander Amilton*, this being a full and final settlement of said community between them."   This act was passed on the 13th January, 1855, within thirty days after judgment dissolving the commu-nity.

It is to all intents and purposes an act of partition, and the evidence of *Mc-Guire* and *Richardson* if legally admissible, which it could hardly be, to explain

so unambiguous a notarial act as this, would not have changed its character so as to withdraw it from the operation of Article 1436, 1440 and 1441 of the Code.

II. But the defendant contends that the plaintiff cannot maintain this action, because she is conclusively presumed to have renounced the community, not having accepted it with due formality thirty days after the judgment of separation. The Article 2389 of the Civil Code is relied on as sustaining this position.

It would be a singular provision of law which should allow a husband who, within thirty days after a judgment of separation obtained by his wife against himself dissolving the community, had made an amicable partition of the common property between himself and her, pursuant to a judicial decree rendered upon the express prayer, to plead the prescription of thirty days against her right to accept. He is effectually estopped from such a plea. Not only is there a judgment between these parties declaring her entitled to one-half the community, but he has acknowledged her right by his notarial attempt to make the partition. An acceptance of the community by a wife separate in property, although to be made within thirty days from the separation finally pronounced, need not be by a notarial act for that purpose only; but, like the heir's acceptance of a succession, may be either express or tacit.   C. C. 982.

In the Old Code (Article 81) there was a provision that "the acceptance of the partnership or community of gains, shall be made *in the same form as is above prescribed for the renunciation of the same.*"   But the contradiction between such a provision and those accompanying Articles which declared that an acceptance was *implied* by the interference of the wife with the common property, or her suffering a judgment to go against her as a partner, was perceived by the committee of jurists appointed to revise the Code of 1808, and in our present Code the absurdity was removed by dropping altogether the provision which required any particular formalities whereby the separated wife's acceptance was to be indicated. No more full or conclusive evidence of her acceptance could have been given than was given by the very act sought to be annulled, an act passed within thirty days after the decree which she had prayed for, awarding her one-half of the common estate, and an authentic act professing to partition the community, and by virtue whereof she actually received a portion of it. She claimed no delay to deliberate. The formality of an inventory was waived by her acts constantly showing her intention to accept the community, and actually intermeddling in it. She expressly accepted it by joining in an act of partition. There is nothing inconsistent with these views in the case of *Audrich* v. *Lamothe et al.,* 12 An. 76. The remarks in that opinion must be construed with reference to the point in judgment; that was, that the wife could not be held liable for debts of the community after a judgment of separation, because she had never claimed any interest in it, and never intermeddled with it, but, on the contrary, by having done neither, and having failed to procure an inventory and to accept within thirty days after the decree of separation, she was presumed to have renounced. See C. C. 2404; C. N. 1463; 5 Marcadé, 604; 13 Toullier, No. 131; *Herman* v. *Theurer,* 11 An. 71.

" L'acceptation de la communauté, comme celle d'une succession, peut se faire expressément ou tacitement *verbis* ou *facto.* Il y a acceptation *expresse* lorsque la femme, soit principalement et par un acte dressé dans ce but, *soit incidemment et dans un acte quelconque,* prend la qualité de femme commune. Il y a acceptation *tacite,* lorsque la femme s'immisce dans les biens de la communauté."   5 Marcadé, 594.

WILLIAMSON
v.
AMILTON.

III. The prescription of thirty days against the wife's right to accept for want of an acceptance in a particular form with a previous inventory, having been erroneously considered by the District Judge as a peremptory bar to the present action, it only remains to inquire whether there was *lesion* beyond one-fourth to plaintiff's prejudice in the partition of the 13th of January, 1855. For the exception as to the lack of more specific averments as to the value of the property and the extent of the *lesion* came too late.

It is a question of fact whether there was *lesion* or not. Our appreciation of the evidence has led us to the conclusion, that there was manifestly *lesion* to a greater extent than the value of one-fourth of the property. But as to the details, it would be premature to decide now what should be done upon a rescission. We can only order that the parties be referred to a notary to make a new partition. The rights of the parties can then be adjusted before the lower court in the usual form.

It is, therefore, decreed, that the judgment of the District Court be avoided and reversed; and it is now ordered, adjudged and decreed, that the .partition of the property heretofore held in common between the plaintiff and defendant, as passed before *B. D. Sheppard*, Recorder of the parish of Ouachita, on the 13th of January, 1855, be rescinded and annulled for *lesion* beyond one-fourth. And it is further ordered and decreed, that this cause be remanded to the lower court, with instructions to refer the parties to a Notary Public and appoint experts for the purpose of taking an inventory of such of the said property as may be still subsisting, and effecting a new partition in pursuance of the decree of separation between the parties, signed on the 16th of December, 1854, and that the suit be otherwise proceeded in according to law; the costs hitherto incurred in the District Court and those of this appeal to be borne by the defendant and appellee, and the future costs to await the judgment of the court.