602 So.2d 743 (1992)
Joan Wegman DORNIER
v.
LIVE OAK ARABIANS, INC. and Phillips Connell Witter.
No. CA 91 0530.
Court of Appeal of Louisiana, First Circuit.
May 22, 1992.
Rehearing Denied August 12, 1992.
*745 Russell L. Dornier, Baton Rouge, for plaintiff-appellee Joan Wegman Dornier.
Kathryn S. Bloomfield, New Orleans, for defendants-appellants Live Oak Arabians, Inc. and Phillips Connell Witter.
Before WATKINS, CARTER and FOIL, JJ.
FOIL, Judge.
This appeal challenges the action of the trial court in granting summary judgment in favor of plaintiff in a suit on a promissory note, as well as the amount of attorney's fees awarded to plaintiff in enforcing the note. We affirm.

FACTS
Plaintiff, Joan Wegman Dornier, brought this action to enforce a promissory note against her former spouse, Phillips C. Witter, the maker of the note, and Live Oak Arabians, Inc., which executed a chattel mortgage to secure the note. The note, payable to Dornier in the amount of $150,000.00, was executed by Witter as part of a property settlement entered into by the parties after Dornier filed a community property partition suit against him. Although the present suit was originally brought by Dornier as an action to enforce the chattel mortgage by executory process, she later converted it to an ordinary proceeding. The defendants answered the suit, claiming that the note and chattel mortgage were unenforceable because of a lack of consideration, and the property agreement, pursuant to which they were executed, should be rescinded on the basis of lesion and duress.
Plaintiff filed a motion for summary judgment seeking recognition of the mortgage and judgment on the amount of the note, plus interest and attorney's fees. The evidence submitted by the parties both in support and in opposition to the motion for summary judgment is comprised of largely undisputed facts. Dornier and Witter were married on March 7, 1970; prior to the marriage, the parties executed a marriage contract providing for a separation of property regime during the marriage. On July 24, 1979, they entered into an agreement revoking the marriage contract. Dornier and Witter obtained a judgment decreeing their divorce on May 13, 1987. Thereafter, Dornier filed a "Petition to Partition Community Property" against Witter in the 19th Judicial District Court for the Parish of East Baton Rouge. She obtained a temporary restraining order prohibiting Witter from disposing of, alienating, or otherwise encumbering any of the assets of the community of acquets and gains existing between herself and Witter.
On November 3, 1989, Dornier and Witter entered into an "Agreement for Settlement of Property" (the "Agreement"), after which Dornier's partition suit was dismissed with prejudice. The agreement was attached to and made part of the consent judgment rendered in the partition suit, which was signed on November 14, 1988. The Agreement explicitly states that in consideration of the dismissal of the suit by Dornier, Witter agreed to pay her the sum of $250,000.00. The two agreed that Witter would pay $100,000.00 in cash on the day that the settlement was signed, and that Witter would execute a promissory note for the $150,000.00 balance.
*746 Witter executed a promissory note payable to Dornier in the amount of $150,000.00, with interest at a rate of 9%, payable in three annual installments of $50,000.00. The note set forth that Witter would pay reasonable attorney's fees in the event Dornier had to take legal action to enforce the note. The note was secured by a chattel mortgage executed by Live Oak Arabians, Inc., of which Witter is president, encumbering 4 horses. Witter defaulted on the note, and despite demand for payment, never paid anything toward the balance owed to Dornier.
In support of her motion for summary judgment, Dornier introduced the note, chattel mortgage, an affidavit by her setting forth many of the undisputed facts and describing the Agreement in detail, the Agreement, and the notice of default. In opposition to the motion, defendants filed a copy of the Agreement, a statement of undisputed material facts, a copy of the temporary restraining order obtained by Dornier, and Witter's affidavit.
In opposition to the motion for summary judgment, defendants asserted the defenses of lesion, duress and lack of consideration, claiming that there were material issues of fact crucial to the defenses, making summary judgment inappropriate. However, after considering the evidence, the trial judge granted summary judgment in favor of Dornier for the full amount of the note with interest, and awarded attorney's fees to her in the amount of $15,000.00. In oral reasons for judgment, the judge stated that the Agreement was a valid transaction and compromise, entered into to settle a substantial lawsuit. He also found that there was sufficient consideration for the note and that the facts set forth by defendant, even if true, did not constitute legal duress as a matter of law. Defendants appealed, challenging these findings, as well as the award of $15,000.00 in attorney's fees.

SUMMARY JUDGMENT
It is well settled that a motion for summary judgment should be granted only if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, show that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law. La.Code Civ.P. art. 966; Louisiana National Bank v. Slaughter, 563 So.2d 445, 447 (La.App. 1st Cir.1990). The burden is on the mover to show that no genuine issue of material fact exists, and it is only when reasonable minds must inevitably conclude that the mover is entitled to judgment as a matter of law that summary judgment is warranted. Id. at 447. In determining whether material issues have been disposed of, any doubt is to be resolved in favor of trial on the merits. If the moving party establishes both that there is no genuine issue of material fact and that he is entitled to judgment as a matter of law, it is incumbent on the opponent to set forth specific facts showing that there is a genuine issue for trial. La. Code Civ.P. art. 967; Louisiana National Bank v. Slaughter, 563 So.2d at 448.
Defendants claim that the defenses of lesion, duress and lack of consideration involve an interpretation of the property settlement and the parties' intent in entering thereto, and are so "fact intensive" that they cannot be properly decided on a motion for summary judgment. We shall address the propriety of the granting of the summary judgment as to each defense separately.
Defendants first challenge the trial court's characterization of the Agreement as a "transaction or compromise", which thereby precluded them from asserting their claim that the Agreement is subject to rescission on the basis of lesion. Under the law, a transaction or compromise, having between the interested parties a force equal to res judicata, may not be attacked on the basis of lesion. La.Civ. Code art. 3078; delaVergne v. delaVergne, 514 So.2d 186, 190 (La.App. 4th Cir. 1987). However, a partition is susceptible to attack on the basis of lesion. La.Civ.Code art. 1398 (repealed by La.Acts 1991, No. 689, § 1); Oberfell v. Oberfell, 516 So.2d 424, 426 (La.App. 1st Cir.1987) (recognizing that a voluntary community property settlement *747 agreement may be rescinded for lesion beyond one-fourth). Defendants argue that the Agreement, which sets forth the parties' respective claims to property, is nothing more than a property settlement, which terminates the parties' claims to certain property and involves a classification of title to property. In effect, they claim the Agreement does essentially what a partition does. They rely on the cases of Joy v. Joy, 379 So.2d 816 (La.App. 4th Cir. 1980), and Harmon v. Harmon, 508 So.2d 616 (La.App.2d Cir.), writ denied, 513 So.2d 1210, (La. 1987), which held that community property settlement agreements are partitions which may be attacked on the basis of lesion. In Harmon, the spouses were granted a legal separation and later executed a document styled "Partition of Community of Acquets and Gains and Settlement of Claims of Separate and Paraphernal Estates." In the partition agreement, the parties conveyed to each other their respective interests in various items of community property. Although the document specifically stated that it was a transaction or compromise, the court held that it was actually a voluntary partition subject to attack on the basis of lesion. The court reasoned that the primary purpose of the agreement was to partition the community property, and thus it was nothing more than a nonjudicial partition between co-owners.
This case is clearly distinguishable from Harmon. The Agreement at issue was explicitly entered into for the purpose of settling the lawsuit filed by Dornier. In the detailed agreement, under the heading, "Dismissal of Lawsuit and Waiver of Claims," the Agreement states: "For and in consideration of a payment of $250,000.00, payable $100,000.00 in cash on this date and $150,000.00 in accordance with the terms of the promissory note attached hereto ... Joan agrees to voluntarily dismiss, with prejudice, the Lawsuit, with Joan and Phil to bear their respective costs and fees.... These payments are not alimony payments or payments for support." The agreement was attached to, and made part of, the judgment dismissing Dornier's lawsuit. Further, we note that Witter acknowledged that he entered into the Agreement with Dornier because of pressure from his creditors to settle the property dispute, since the filing of the partition action questioned the status of certain marital property. In the Agreement, the parties stipulated that there was never any community of acquets and gains existing between them during the marriage, despite the fact that they had revoked their separation of property arrangement during their marriage. The parties further explicitly waived and compromised any reimbursement claim which would have been viable under Louisiana law, particularly any claims against their separate property. The Agreement disposed of the central issues raised by the partition action, that is, whether there was any property susceptible to being partitioned as community property and whether either party's separate property was subject to a reimbursement claim.
Thus, unlike the community property partition agreement in Harmon, the Agreement at issue can hardly be considered as a document intended to do nothing more than partition community property. Dornier and Witter agreed that no community existed between them, that there was no community property available for distribution, and that neither had any reimbursement claims against the other's separate property. Instead, the Agreement only delineates and recognizes the parties' separate property. Further, unlike both cases relied upon by defendants, in which the property settlements were not entered into to settle lawsuits, the Agreement was executed as part of a settlement of the lawsuit filed by Dornier and was attached to and made part of the judgment dismissing that suit.
Clearly, the Agreement is a transaction or compromise under La.Civ.Code art. 3071, which defines a transaction or compromise as "an agreement between two or more persons, who, for preventing or putting an end to a lawsuit, adjust their differences by mutual consent, in the manner which they agree on, and which every one of them prefers to the hope of gaining, balanced by the danger of losing." Because the Agreement *748 is a compromise, entered into for the purpose of settling the partition suit, it cannot be attacked on the basis of lesion beyond moiety. La.Civ.Code art. 3078; delaVergne v. delaVergne, 514 So.2d at 190. Thus, the trial court was correct in ruling that as a matter of law, the defendants could not assert lesion as a basis to rescind the Agreement.
Next, defendants claim that the trial court erred in rejecting their claim that the note and chattel mortgage are unenforceable because the Agreement, pursuant to which they were executed, is subject to rescission because Witter was under legal duress when he entered into it. They insist that at the least, there is a material issue of fact as to whether Witter was under duress, which can only be resolved by a presentation of all of the facts in a trial on the merits, including an examination of Witter's subjective characteristics.
In essence, defendants alleged that Witter was under economic pressure from his creditors, accompanied by personal and emotional strain accompanying his divorce, which led him to enter into the Agreement. Defendants' evidence sets forth that three of Witter's major creditors, with whom he was negotiating loan restructuring arrangements, exerted pressure on Writter to settle his differences with Dornier after they learned she filed the partition action and obtained a temporary restraining order prohibiting Witter from alienating or encumbering any community property. Concerned that the security they held on Witter's loans might be considered "community property" because the temporary restraining order did not specifically delineate which property it covered, they insisted that Witter enter into an agreement with Dornier decreeing that she had no right to this security. According to Witter, had he not entered into the Agreement with Dornier, he would have been in financial jeopardy. Thus, defendants insist that Witter was "between a rock and a hard place" because of the demands of his creditors arising out of Dornier's actions in filing the partition suit and obtaining a temporary restraining order, and he was consequently compelled to sign the agreement. Witter's evidence revealed that his loans were indeed restructured by his creditors on the very day that he signed the Agreement.
However, we note that Witter is an attorney, and was represented by a law firm in negotiations leading to the formation of the Agreement. Further, paragraph 8.5 of the Agreement states, in part, that "[t]he parties acknowledge that they are entering into this Agreement freely and voluntarily;"... and "that extensive negotiation, review and discussion of this Agreement occurred."
La.Civ.Code art. 1959 provides that "[c]onsent is vitiated when it has been obtained by duress of such a nature as to cause a reasonable fear of unjust and considerable injury to a party's person, property, or reputation." That article further provides that the age, health, disposition and other personal circumstances of a party must be taken into account in determining the reasonableness of the fear. Additionally, La.Civ.Code art. 1962 makes it clear that the threat of doing a lawful act or of exercising a right does not constitute duress.
La.Civ.Code art. 1959 sets forth an objective, as well as a subjective standard for evaluating a claim of duress. Eymard v. Terrebonne, 560 So.2d 887, 890 (La.App. 1st Cir.), writ denied, 567 So.2d 614 (La. 1990). The fear must be "reasonable" and of "unjust and considerable injury " to one's person, property or reputation. Id. 560 So.2d at 890. Even if Witter could prove that his creditors "pressured" him into entering the agreement with Dornier in order to obtain favorable financial treatment, these actions would not, as a matter of law, constitute legal duress. There is no allegation by Witter that his creditors' actions were unjust or unfounded in any way. Further, the emotional strain Witter may have experienced from his divorce is also insufficient to establish legal duress. See Adams v. Adams, 503 So.2d 1052, 1057 (La.App.2d Cir.1987) (holding that the conflicting emotions caused by the strain of going through a critical period in one's life, *749 such as a separation from a spouse and the resulting division of property, is not the type of strain constituting legal duress). Therefore, there is no material issue of fact on the viability of this defense, and the trial court properly rejected it in ruling on the motion for summary judgment.
Finally, defendants claim that the note and chattel mortgage are unenforceable because they were entered into without consideration. Defendants allege that Witter received nothing in exchange for his agreement to pay Dornier $250,000.00. However, we have already determined that the Agreement is a valid compromise, entered into between the parties to end the partition suit filed by Dornier. A compromise agreement requires no other cause or consideration than an adjustment of differences and the avoidance of litigation. Succession of LaHaye, 361 So.2d 1351, 1355 (La.App. 3d Cir.1978). Witter's admitted primary motivation in signing the Agreement was to quickly resolve the issues raised in Dornier's lawsuit regarding the status of the property disputed therein in order to obtain a favorable resolution of his financial problems with his creditors. In exchange for his agreement to pay Dornier $250,000.00, Witter avoided litigation on the status of the property, and was able to work out his problems with his creditors, as is evidenced by the fact that he signed restructure agreements with his creditors on the same day that he signed the Agreement. Therefore, there was sufficient consideration for the note, and this attack on its enforceability is without merit.

ATTORNEY'S FEES
Lastly, defendants challenge the trial court's award of $15,000.00 to Dornier's attorney as excessive. They point out that Dornier's current husband represented her in the present lawsuit, and further charge that no evidence was adduced at the hearing on the motion for summary judgment.
In making awards for attorney's fees, the trial court is vested with great discretion, the exercise of which will not be interfered with on appeal in the absence of a showing of clear abuse of discretion. Sims v. Selvage, 499 So.2d 325, 329 (La. App. 1st Cir.1986). After reviewing the entire record, we are unable to find an abuse of the trial court's great discretion in setting the attorney's fee award, and we decline to disturb it.

CONCLUSION
Based on the foregoing, the trial court's judgment is affirmed in its entirety. All costs of this appeal are assessed to defendants, Phillips C. Witter and Live Oak Arabians, Inc.
AFFIRMED.