673 So.2d 642 (1996)
O. Weldon AVERETTE, Jr. and Judye Jackson Averette,
v.
INDUSTRIAL CONCEPTS, INC., and Dudley J. Boyer, Jr.
No. 95 CA 1286.
Court of Appeal of Louisiana, First Circuit.
April 30, 1996.
*643 C. John Caskey, Baton Rouge, for Plaintiffs-Appellants, O. Weldon Averette, Jr. and Judye Jackson Averette.
James R. Chastain, Jr., Baton Rouge, for Defendants-Appellees, Industrial Concepts, Inc., and Dudley J. Boyer.
Before CARTER, PITCHER and CRAIN,[1] JJ.
HILLARY J. CRAIN, Judge Pro Tem.
This is an appeal by plaintiffs, O. Weldon Averette, Jr., and Judye Jackson Averette, from a judgment, dismissing their claims with prejudice.

BACKGROUND
Industrial Concepts, Inc. ("Industrial Concepts") is a closely held corporation founded in 1979 by Dudley Boyer ("Boyer"), who has always owned a majority interest in the company. The business of the corporation is the sale of valves.
Judye Jackson Averette's brother, Joseph Scott Jackson, Jr. ("Jackson"), a long time friend of Boyer, acquired 300 shares of stock and became employed by Industrial Concepts in 1980. In 1984, Jackson sold 255 shares of his stock to the Averettes. He moved out of state and was no longer employed by Industrial Concepts. The sale price was $476,000.00 or $1,866.67 per share. The Averettes borrowed $537,818.74 to finance the stock purchase and to pay off other loans. The monthly note was $7,382.00.
At a meeting prior to the Averettes' stock purchase, Boyer informed Mr. Averette that he would have to be a working owner of the business. Mr. Averette agreed. There was no employment contract. Mr. Averette received a monthly salary of approximately $2,700.00, a car allowance, and health insurance.
Bonuses were paid at the end of the fiscal year, June 30. Mr. Averette received a $72,000.00 bonus at the end of the 1985 fiscal year.
In May, 1986, Mr. Averette was asked to resign. The reason given was Mr. Averette's inadequate performance as a salesman. Although Mr. Averette was formerly employed as a salesman, he had no experience selling valves. He began his employment with Industrial Concepts, working in the office and the warehouse, learning the business. After a time, he began to make outside sales calls. In the year preceding the termination of his employment, Mr. Averette's total sales were approximately $37,000.00. The total sales of the company for the fiscal year ending June 30, 1986, were $2,160,222.00. Mr. Averette's employment ended in May, 1986. He did not receive a bonus for the 1986 fiscal year. At the time of Mr. Averette's termination/resignation, the Averettes signed an agreement for the redemption of their stock at a total price of $175,000.00, or $686.27 per share. The Averettes' stock ownership, 255 shares, constituted 25.5% of the outstanding stock.
The Averettes filed this suit against Industrial Concepts and Boyer, seeking to have the redemption agreement declared null. The Averettes claim that their consent was vitiated by duress. They allege that Boyer, majority stockholder and president of the company, coerced them into selling their stock by threatening to liquidate the assets of the company, which would make the stock worthless.
Alternatively, the Averettes requested an award of the difference between the purchase price of the stock ($476,000.00) and the sale price of the stock ($175,000.00), and an award of $66,880.00, which represents the constructive dividend allegedly owed to the Averettes for the fiscal year in which Mr. Averette was terminated.
After a bench trial, the district court rendered judgment in favor of defendants, dismissing plaintiffs' claim with prejudice. The court, in written reasons, found that the financial duress which precipitated the stock sale by the Averettes was that which arose from their purchase of the stock at a grossly *644 inflated price and the debt which they incurred to finance this transaction. The court further found that other sources created the Averettes' economic hardship, and that "Industrial Concepts, Inc. and Dudley J. Boyer in no way caused or furthered the financial circumstances which necessitated the second sale back to Industrial Concepts, Inc."
The Averettes raise three issues for our review. First, they assert that the trial court improperly used an objective standard based on the fairness of the redemption contract in determining whether there was legal duress. The Averettes argue that a subjective test, focusing on the state and conditions of the parties, should be used.
Secondly, the Averettes claim that the trial court's finding of the lack of legal duress was manifestly erroneous. Lastly, the Averettes argue that, if we uphold the redemption contract's validity, they are entitled to a pro-rated constructive dividend based on their stock ownership for a portion of the 1985-86 fiscal year.

DURESS
A contract is formed by the consent of the parties. La.C.C. art. 1927. Consent is vitiated "by duress of such a nature as to cause a reasonable fear of unjust and considerable injury to a party's person, property, or reputation." La.C.C. art. 1959. In determining the reasonableness of the fear, the party's age, health, disposition, and other personal circumstances must be considered. La.C.C. art. 1959.
Duress which would vitiate consent, legal duress, is determined by applying a subjective as well as objective standard. La. C.C. art. 1959; Dornier v. Live Oak Arabians, Inc., 602 So.2d 743, 748 (La.App. 1st Cir.), writ denied, 608 So.2d 177 (La.1992); Eymard v. Terrebonne, 560 So.2d 887, 890 (La.App. 1st Cir.), writ denied, 567 So.2d 614 (La.1990). The subjective element is the party's personal reaction to circumstances, and the objective elements are the reasonableness of the fear and the unjustness of the injury based on how reasonable persons would react to the circumstances. See, Dornier v. Live Oak Arabians, Inc., 602 So.2d at 748; Eymard v. Terrebonne, 560 So.2d at 890.
Plaintiffs initially argue that the trial court looked only to the fairness of the redemption contract, and did not consider the subjective elements of the Averettes' state and condition, in determining whether there was duress sufficient to rescind the contract. We disagree.
In written reasons for judgment, it is clear that the fairness of the contract was only one element considered by the court. While the court did find that the redemption price was fair, other factors were considered. For example, the court looked at the "staggering debts" incurred by the Averettes when purchasing the stock, and the economic hardships from other sources experienced by the Averettes. The court evaluated the plaintiffs' claim of duress by objective and subjective standards as is required. The plaintiffs' argument on this issue is without merit.
The Averettes also claim that the trial court's finding of the lack of legal duress was manifestly erroneous. A trial court must be given great discretion in resolving the issue of duress. Poole v. Ward, 576 So.2d 1089, 1090 (La.App. 3d Cir.1991); Dunham v. Anderson-Dunham, Inc., 466 So.2d 1317, 1322 (La.App. 1st Cir.), writ denied, 472 So.2d 29 (La.1985). Further, it is the trial court alone which has the opportunity to evaluate the credibility of the witnesses and to assess their testimony. The trial court's findings of fact will not be set aside unless they are clearly wrong or manifestly erroneous. Stobart v. State of Louisiana, Department of Transportation and Development, 617 So.2d 880, 882 (La.1993).
Legal duress has been said to connote "an actor performing an exterior act which gives rise to the duress, rather than the entire set of objective circumstances causing the victim to act as he does." Wilson v. Aetna Casualty & Surety Company, 228 So.2d 229, 232 (La.App. 3d Cir.1969) [citing Planiol, Civil Law Treatise, Volume 1, Nos. 277, 278 (LSLI translation, 1959) and Volume 2, Nos. 1070, 1072; Aubry & Rau, Obligations, Section 343a (1 Civil Law Translations 314, LSLI translation, 1959); Holstein, Vices of Consent in the Law of Contracts, 13 Tul.L.Rev. 362 *645 and 561 at 569-79 (1939)]. A threat of doing a lawful act or exercising a right does not constitute legal duress. La.C.C.1962.
The plaintiffs claim that, in May, 1986, Mr. Averette was told by Boyer that he wanted to terminate Mr. Averette's employment. Plaintiffs further allege that Boyer gave Mr. Averette two options. He could either sell his stock back to the corporation for "pennies" on the dollar, or if he elected to retain stock ownership, the stock would be rendered worthless because Boyer would spend down the company's assets.
Randall Verdun, an Industrial Concept employee, was present at the meeting between Averette and Boyer. He testified that Averette was told that he could leave and receive no dividends or he could sell his stock to the company. Boyer agreed with Mr. Verdun's account. Boyer testified that Industrial Concepts had never paid any dividends. Boyer could not recall mentioning spending down the assets but, he testified, that would not make any sense because his name was on the line.
While the Averettes and Jackson, Mrs. Averette's brother to whom the Averettes paid $476,000.00 for the stock, testified that Boyer mentioned spending down the assets, it is evident from the record that the trial court did not rely on this testimony. The trial court stated that "Industrial Concepts, Inc. and Dudley J. Boyer in no way caused or furthered the financial circumstances which necessitated the second sale back to Industrial Concepts, Inc." The trial court was of the opinion that the duress which caused the Averettes to enter into the redemption contract was that which arose from their financial difficulties brought on by their stock purchase at a grossly inflated price.
The evidence supports the trial court's finding that the stock at all relevant times had a value of approximately $250 per share. The Averettes purchased the stock from Mrs. Averette's brother at a value of $1,866.67 per share. The stock was redeemed by Industrial Concepts at $686.27 per share.
The evidence reflects that the Averettes did not attempt to ascertain the value of the stock before they purchased it. They did not look at Industrial Concepts' financial records, articles of incorporation, or bylaws. The Averettes did not contact an attorney or CPA for advise regarding owning a minority interest in a closely held corporation. They did not inquire whether bonuses or dividends were previously given. They instead borrowed one-half million dollars and incurred a monthly loan obligation of $7,382.00, based on little or no sound financial information.
Mr. Averette's monthly salary was approximately $2,700.00. The Averettes' income was supplemented by oil and gas royalties. The evidence reflects that the royalty revenues decreased.
The set of subjective as well as objective circumstances in the instant case include: the grossly inflated purchase price, the economic hardship caused by the decrease in the oil and gas revenues, the termination of Mr. Averette's employment,[2] the negotiated sale price, and the possible lack of future dividend payments.[3]
Additionally, a circumstance to be considered in determining whether consent was freely given is the assistance of legal counsel in the evaluation of the contract and the determination of options available.[4]Board of Commissioners of the Port of New Orleans v. Turner Marine Bulk, Inc., 629 *646 So.2d 1278, 1281 (La.App. 4th Cir.1993), writ denied, 94-0140 (La. 3/11/94), 634 So.2d 392; Dornier v. Live Oak Arabians, Inc., 602 So.2d at 748. The Averettes retained an attorney before entering into the redemption agreement. The Averettes had the benefit of counsel, and there was ample opportunity to review the contract and investigate possible alternatives. Mr. Averette testified that the attorney was apprised of the threats. Minority shareholders' rights were addressed, and the attorney acted on behalf of the Averettes. The sales price was increased. The sale took place approximately two weeks from the time of Mr. Averette's termination.
The trial court determined that, while the Averettes suffered economic duress which led to their agreement to sell the stock, the economic duress arose from a set of circumstances which did not include improper threats. The trial court had the opportunity to evaluate the witnesses and assess circumstances. We cannot say that the trial court was manifestly erroneous in its findings of fact nor abused its discretion in finding no legal duress. Plaintiffs' assignment of error on this issue is without merit.

CONSTRUCTIVE DIVIDENDS
In the last issue raised, we are asked to determine whether the bonuses paid for the 1985-86 fiscal year are, in fact, constructive dividends, and, if so, whether the Averettes are entitled to a pro-rated share based on their stock ownership for a portion of the 1985-86 fiscal year.
A review of the evidence reflects that no stockholder who was not an employee received a bonus, and that employees who were not stockholders received bonuses. The evidence also indicates that the percentage of the total yearly bonus a stockholder received does not correlate to the percentage of the outstanding stock the stockholder owned.
Defendants called the only expert to testify on this issue. Mr. Ralph Stephens was accepted by stipulation as an expert in the field of tax, accounting and valuation of closely held corporations. He reviewed Industrial Concepts' financial documents and was of the opinion that the bonuses paid were not constructive dividends.
We find that the Averettes failed to prove that the bonuses paid were constructive dividends. Plaintiffs' assignment of error on this issue is without merit.

DECREE
For the foregoing reasons, the judgment of the trial court is affirmed. Costs are assessed against plaintiffs.
AFFIRMED.
NOTES
[1] Judge Hillary J. Crain, retired, is serving as judge pro tempore by special appointment of the Louisiana Supreme Court.
[2] As Mr. Averette was an at-will employee whose employment could be terminated at any time, the threat of termination would not alone maintain the Averettes' duress claim. See, Cellular One, Inc. v. Boyd, 94-1783 (La.App. 1st Cir. 3/3/95), 653 So.2d 30, writ denied, 95-1367 (La. 9/15/95), 660 So.2d 449; Litigation Reprographics and Support Services, Inc. v. Scott, 599 So.2d 922 (La.App. 4th Cir.1992).
[3] Dividends "may" be paid in the "discretion" of a corporation's board of directors. La.R.S. 12:63. Industrial Concepts had never declared a dividend.
[4] Legal duress occurs when one's agreement to contract is obtained by an improper threat, and there is no reasonable alternative but to assent. La.C.C. art. 1959, Official comment (b); Wolf v. Louisiana State Racing Commission, 545 So.2d 976, 980 (La.1989); Grezaffi v. Smith, 93-1696, p. 7 (La.App. 1st Cir. 6/24/94), 641 So.2d 210, 214.