798 So.2d 165 (2001)
Robert Dean HOOVER
v.
Anne Marie Olivier HOOVER.
No. 1999 CA 3055.
Court of Appeal of Louisiana, First Circuit.
June 22, 2001.
Writ Granted November 16, 2001.
*167 James Don Thomas, II, Baton Rouge, LA, for plaintiff/appellee, Robert Dean Hoover.
Gregory S. Johnson, Metairie, LA, for defendant/appellant, Anne Marie Olivier Hoover.
BEFORE: CARTER, C.J., FOIL, WEIMER, PETTIGREW, and CLAIBORNE,[1] JJ.
FOIL, Judge.
This is an appeal from a judgment granting plaintiff's motion for summary judgment and dismissing defendant's motion to partition an alleged recently discovered community asset or, in the alternative, to set aside the community property partition based on fraud and/or lesion. For the reasons that follow, we affirm.

FACTS
Robert Dean Hoover (Robert) and Anne Marie Olivier Hoover (Anne) were married on August 30, 1980. On November 16, 1994, Robert filed a petition for divorce under LSA-C.C. art. 102. Robert filed a new petition for divorce under LSA-C.C. art. 103 on June 5, 1995. A judgment of divorce was signed on July 18, 1995. A resolution of the property issues was included in a community property partition (the partition) executed by Anne on June 23, 1995, and by Robert on July 11, 1995. The partition was not made a judgment of the court. Both parties were represented by counsel throughout the divorce proceedings.
Robert is an attorney practicing law through his legal corporation, "Robert D. Hoover, A Professional Law Corporation." On December 7, 1994, Robert, through his corporation, entered into a contingency fee contract with Robert Lynn Mizell (Mizell). The contract provided that after trial, if an appeal was necessary to obtain a final judgment, the client agreed to pay 40% of any amount recovered as the legal fee. Robert filed suit on behalf of Mizell on March 6, 1995. According to Anne, Mizell received a judgment for over three million dollars at trial, and the matter settled while the appeal of the Mizell case was pending.
In the partition, under section A, "Conveyance by Robert Dean Hoover," Anne received, among other things, ten percent of the community-owned portion of any net legal fees realized in connection with the Malloy and Favron cases. She also received fifty percent of the community-owned portion of any net legal fees realized in connection with the Passman case. The Mizell case is not mentioned. Under section B, "Conveyance by Anne Marie Olivier Hoover," Anne conveyed to Robert, among other things, any and all community-owned stock and assets in the corporation designated as Robert D. Hoover, A Professional Law Corporation.
On September 4, 1998, Anne filed a motion to partition an alleged recently discovered community asset or, alternatively, to set aside the community property partition based on fraud and/or lesion. Anne alleged that the newfound community asset *168 is the contingency fee contract Robert had as attorney for the plaintiffs in the Mizell case. In the alternative, she alleged that Robert fraudulently concealed the asset from her and her attorney, and therefore the partition should be rescinded and/or the Mizell suit partitioned. In the second alternative, she alleged that she received less by more than one-fourth of the fair market value of her portion of the partition, and thus the agreement should be rescinded on the basis of lesion.
Robert filed an answer to the motion to partition and, on June 17, 1999, filed a motion for summary judgment. On the same date, Robert filed peremptory exceptions raising the objections of prescription and no cause of action.
After a hearing, the trial court granted the motion for summary judgment and dismissed the matter with prejudice. The trial court did not reach the exceptions filed by Robert.
Anne appealed and alleges that the trial court erred in granting summary judgment as to her claims of fraud and lesion. She further argues that this Court should deny Robert's exception raising the objection of prescription. Robert answered the appeal and seeks damages, including attorneys fees and costs for frivolous appeal.

MOTION FOR SUMMARY JUDGMENT
A motion for summary judgment should be granted only if the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits, show that there is no genuine issue as to material fact and that mover is entitled to judgment as a matter of law. LSA-C.C.P. art. 966 B. Appellate courts are to review summary judgments de novo under the same criteria that govern the district court's consideration of whether summary judgment is appropriate. Because it is the applicable substantive law that determines materiality, whether a particular fact in dispute is material can be seen only in light of the substantive law applicable to the case. Calhoun v. Hoffman-La Roche, Inc., 98-2770, p. 4 (La. App. 1 Cir. 2/18/2000), 768 So.2d 57, 60-61, writ denied, 00-1223 (La.6/23/2000), 765 So.2d 1041.

FRAUD
Anne alleged in her motion to partition or set aside the community property partition that Robert fraudulently concealed an asset (the Mizell suit) from her and her attorney. In support of his motion for summary judgment, Robert argues that he informed Anne's attorney that there were other contingency fee cases besides Malloy, Favron, and Passman, but that she would have to conduct formal discovery to obtain information on those additional cases. Anne's decision not to seek that information, he argues, does not constitute fraud.
Fraud is defined as, "a misrepresentation or a suppression of the truth made with the intention either to obtain an unjust advantage for one party or to cause a loss or inconvenience to the other." LSA-C.C. art. 1953. Silence or inaction may also constitute fraud. LSA-C.C. art. 1953.
In support of his motion for summary judgment, Robert attached his own affidavit and that of Nancy Sue Gregorie, the attorney who represented Anne in the divorce proceeding. Robert attests that he advised Ms. Gregorie that there were other contingent fee cases in which he was involved, but that she would have to conduct formal discovery to obtain information on those cases. He attests that he was not served with any discovery regarding information about his law corporation's contingent fee cases.
*169 Ms. Gregorie attests that on June 26, 1995, Robert advised her that there were other contingent fee cases in which the law corporation represented the plaintiffs, but that she would have to conduct formal discovery to obtain specific information on those cases. Ms. Gregorie attests that she discussed this with Anne on June 29, 1995, and Anne decided to accept the proposed settlement she had previously signed that was being held in trust pending Ms. Gregorie's review of the personal injury cases at Robert's law office.
We find that Robert has demonstrated a lack of factual support for Anne's claim that Robert fraudulently concealed the Mizell case. The sworn testimony shows that Robert disclosed the existence of other contingent fee cases and informed Anne's attorney she would have to seek information on those cases through formal discovery.
Having demonstrated lack of factual support for an essential element of Anne's claim, in accordance with LSA-C.C.P. art. 966C(2), the burden shifted to Anne to come forth with evidence (affidavits or discovery responses) that demonstrates that she would be able to meet the evidentiary burden of proof on the allegation of fraud at trial. See Babin v. Winn-Dixie Louisiana, Inc., XXXX-XXXX, p. 4 (La.6/30/2000), 764 So.2d 37, 39. In opposition to the motion for summary judgment, Anne submitted a copy of a request for production of documents certified by her counsel to have been mailed to Robert on September 30, 1998. She also attached Robert's response to the request wherein he objected to her request for a complete copy of the file in the Mizell matter. Robert's response is dated March 31, 1999.
In her memorandum in opposition to summary judgment, Anne asserted that she was not in a position to state with specificity what exact facts were withheld by Robert, but maintained that his silence on certain issues was specifically intended to defraud her in contravention of his duty to disclose. At the hearing on the motion for summary judgment, Anne's counsel argued that he had not had a chance to conduct discovery and that he would be filing a motion to compel discovery of the Mizell file. Then, he stated, he would depose Robert and Ms. Gregorie.
The mere contention by an opponent to a motion for summary judgment that he does not have the information necessary to defend against the motion because of the movant's failure to comply with discovery is insufficient to defeat the motion. Crocker v. Levy, 615 So.2d 918, 920 (La.App. 1st Cir.1993). Robert's discovery responses were sent to Anne's counsel in March of 1999. The hearing on the motion for summary judgment was originally scheduled for July 20, 1999, and was held on August 10, 1999. The record does not reflect any effort by Anne to compel discovery. The only motion for continuance filed by Anne states that the reason for the request was because her counsel would be out of town the week of the originally scheduled hearing, and makes no mention of the need for additional discovery. Further, Anne did not file an affidavit stating that she could not present by affidavit facts essential to justify her opposition to summary judgment as provided in LSA-C.C.P. art. 967.[2]
*170 We find that Anne had adequate time to conduct sufficient discovery to oppose the motion for summary judgment or to file motions to compel or continue the hearing. We further find that Robert met his burden of showing an absence of factual support for an essential element of Anne's claim of fraud. Anne failed to produce factual support to establish that she would be able to satisfy her evidentiary burden of proof at trial. Accordingly, the trial court properly granted summary judgment on the issue of fraud in favor of Robert.

LESION
Anne alleged in her motion to partition or set aside the community property partition that the partition should be rescinded because it is lesionary in that she received less by more than one-fourth of the fair market value of her portion. If Anne did not receive three-fourths of her one-half of the divided community property, the partition agreement is lesionary. LSA-C.C. art. 814. Article 814 provides, "[a]n extrajudicial partition may be rescinded on account of lesion if the value of the part received by a co-owner is less by more than one-fourth of the fair market value of the portion he should have received." To establish a claim of lesion, the community property's true value (net value) must be ascertained, and it must be determined from the property acquired whether a party received value less than three-fourths of one-half share of the true value of the divided community property. McCarroll v. McCarroll, 96-2700, p. 10 (La.10/21/97), 701 So.2d 1280, 1285. The value of the property exchanged is determined as of the date the exchange was executed. Id.
While recognizing the elements of a cause of action for lesion as set forth in McCarroll, we believe the partition agreement entered into by the parties in this case constitutes a valid compromise. A transaction or compromise is defined as "an agreement between two or more persons, who, for preventing or putting an end to a lawsuit, adjust their differences by mutual consent, in the manner which they agree on, and which every one of them prefers to the hope of gaining, balanced by the danger of losing." LSA-C.C. art. 3071. Under the law, a transaction or compromise, having between the interested parties a force equal to res judicata, may not be attacked on the basis of lesion. LSA-C.C. art. 3078; Dornier v. Live Oak Arabians, Inc., 602 So.2d 743, 746 (La. App. 1st Cir.), writ denied, 608 So.2d 177 (La.1992).
The record is clear in this matter that both parties were fully aware of the consequences of their actions in approving the community property partition. In his affidavit submitted in support of summary judgment, Robert attested that he and Anne "voluntarily partitioned and settled all matters" concerning their former community. The partition agreement states that, subject to the provisions of the partition, the parties released and discharged the other from any and all claims the parties had against each other. In his affidavit, Robert attested that he advised Anne's counsel, Ms. Gregorie, that he was involved in other contingent fee cases, but that she would have to conduct formal discovery to obtain information on those cases. Ms. Gregorie attested that she discussed this with Anne, but Anne decided to accept the proposed settlement. At the time of the settlement agreement, the Mizell case was in its very early stages and the value of the case was purely speculative. A value could have been assigned to this speculative asset by agreement of the parties at the time of the partition. This was not done in this case. Anne chose to accept the proposed settlement with the *171 knowledge that Robert was involved in other contingency fee cases besides those specifically mentioned in the agreement. We find that the partition agreement constitutes a valid compromise and cannot be attacked on the basis of lesion simply because the Mizell case, a speculative asset to which no value was assigned, later turned out to be a very valuable asset.
Accordingly, we find that the trial court correctly granted Robert's motion for summary judgment on the issue of lesion. Although we find no merit in Anne's assignments of error,[3] we deny Robert's request for damages, including attorneys fees and costs based on frivolous appeal.

CONCLUSION
For the reasons set forth in this opinion, the judgment of the trial court granting summary judgment in favor of Robert and dismissing Anne's motion to partition a discovered community asset or, in the alternative, to set aside the community property partition based on fraud and/or lesion is affirmed. Robert's request for damages including attorneys fees and costs based on frivolous appeal is denied. Costs of this appeal are assessed to appellant, Anne Marie Olivier Hoover.
AFFIRMED.
CARTER, C.J., and WEIMER, J. concur in part and dissent in part with reasons.
WEIMER, J., concurs in part and dissents in part.
I concur regarding the issue of fraud, but dissent regarding the issue of lesion.
There is an apparent conflict between LSA-C.C. art. 814,[1] which allows an extra-judicial partition to be rescinded based on lesion, and LSA-C.C. art. 3078,[2] which states a compromise cannot be attacked even if lesionary. Reading these articles in pari materia, there are two possible ways to reconcile these provisions: a) if the partition is reached as the result of a compromise, as defined in Article 3071,[3] it cannot be attacked based on lesion; or b) a voluntary (as opposed to a judicial) partition can be rescinded for lesion; however, once a partition is attacked and a compromise is thereafter reached, there can be no further attack on the partition because of lesion.
*172 The former emphasizes the right of parties to agree and compromise and results in achieving finality. The latter recognizes the benefits of lesion which has been a part of our legal heritage since the Civil Code of 1825. The latter is the rule announced in Williamson v. Amilton, 13 La. Ann. 387, 388 (1858), "A partition, even when it takes upon itself the aspect and qualities of a compromise, may be attacked for lesion beyond one-fourth; but the partition once made, if disputes grow out of it, and the parties compromise on those disputes, this compromise is unassailable for lesion." See also Gates v. Gates, 485 So.2d 114 (La.App. 2 Cir.1986); Joy v. Joy, 379 So.2d 816 (La.App. 4 Cir.1980).[4] These cases represent a reasonable attempt to reconcile the competing considerations of lesion versus compromiseof allowing those who have been taken advantage of to complain versus finality.
To the rationale of Williamson we owe deference, in part because of its age, in part because of its reasonableness, in part because of the more recent approval of its wisdom.
Some, but not all, partitions are compromises. If a partition is not a compromise as defined by Article 3071, then Article 3078 does not apply and the partition can be attacked based on lesion. Also, if the partition is a judicial partition, it cannot be attacked based on lesion because only extrajudicial partitions may be rescinded based on lesion. See LSA-C.C. art. 814.
Those community property partitions which have had court approval have been deemed judicial partitions and not subject to attack based on lesion. See, e.g., Junca v. Junca, 98-1723 (La.App. 1 Cir. 12/28/99), 747 So.2d 767, writ denied, XXXX-XXXX (La.6/2/00), 763 So.2d 601; Lapeyrouse v. Lapeyrouse, 98-0271 (La.App 1 Cir. 2/19/99), 729 So.2d 682; and Dornier v. Live Oak Arabians, Inc., 602 So.2d 743, (La.App. 1 Cir.1992), writ denied, 608 So.2d 177 (1992). Dornier is cited by the majority as authority for finding that the Hoovers' agreement was a compromise and thus not subject to a lesionary action. However, Dornier involved an "Agreement for Settlement of Property" which was attached to and made a part of a partition suit. As such, Dornier is distinguishable from this matter because the Hoovers' partition was extrajudicial. Those community property partitions which have not had court approval have not been deemed compromises and have been subjected to attacks based on lesion. See Gates, Joy, and Williamson, supra.
In community property disputes, the jurisprudence has essentially elevated the right to pursue a lesionary action over the *173 right of parties to resolve their differences through an extrajudicial compromise.
Lesion embodies the altruistic desire to protect the weak or improvident. See Dupree v. Myers, 19 La.App. 806, 138 So. 146 (2d Cir.1931), amended on reh'g, 19 La. App. 806, 141 So. 393 (2d Cir.1932). Lesion exists to "ensure that equality is achieved" and, in community property partitions, prevents one party from taking "advantage of the extreme range of emotions which may affect the other party's judgment following a separation or divorce." Harmon v. Harmon, 508 So.2d 616, 621 (La.App. 2 Cir.), writ denied, 513 So.2d 1210 (1987). Lesion is a part of the fabric which comprises the uniqueness of Louisiana's legal system when compared to our sister states and represents a link to our civil law heritage. Lesion exists despite the voluntary nature of an agreement. Louisiana Civil Code article 2589, although applicable to the sales of immovables, provides in part: "[T]he seller may invoke lesion even if he has renounced the right to claim it."
Furthermore, the parties' partition agreement states in part:
The parties acknowledge the existence of action for lesion in partitions under Articles 1398 and 1961 of the Louisiana Civil Code, and do hereby expressly waive and renounce the benefit of said action for lesion to the extent that such would allow the rescission of this agreement; further, should either party claim and prove such lesion, the aggrieved party is restricted to the recovery of damages from the other party in an amount necessary to make the partition equal, but such aggrieved party shall not in any event enjoy the right to rescind this agreement. (Emphasis added.)[5]
This language does not waive the benefit of lesion; rather, the language waives the remedy of rescission if the agreement is lesionary and limits the aggrieved party to a recovery of damages. While pretermitting whether one with a lesionary claim arising out of a partition has a claim for rescission or is limited to damages,[6] it is noted the agreement between the parties clearly affords to the party aggrieved a claim for damages if the agreement is lesionary.
In this matter, the agreement was not approved by the court and the language of the partition did not waive all of the benefits of lesion. Thus, the partition could be attacked based on lesion.
CARTER, C.J., concurs in part and dissents in part.
I totally agree with my learned colleagues in the majority sustaining the summary judgment in favor of Robert on the issue of fraud.
I disagree with the majority opinion on the lesion issue and set forth that Louisiana Civil Code article 814 provides: "An extrajudicial partition may be rescinded on account of lesion if the value of the part received by a co-owner is less by more than one-fourth of the fair market value of the portion he should have received." To establish a claim of lesion, the community property's true value (net value) must be ascertained and it must be determined from the property acquired whether a party received value less than three-fourths of one-half share of the true value of the divided community property. McCarroll *174 v. McCarroll, 96-2700, p. 10 (La.10/21/97), 701 So.2d 1280, 1285.
Robert's motion for summary judgment states that there are no genuine issues of material fact to the claims or causes or action alleged in the motion filed by Anne. In his memorandum in support of summary judgment, Robert addresses Anne's main demand that the fee contract is an unpartitioned community asset,[1] her claim of fraud, and finally the affirmative defenses pled in his answer to the motion. With regard to the lesion claim, Robert states, "Mr. Hoover has filed Peremptory Exceptions addressing the issue of lesion and accounting."
In his argument to the trial court, Robert's counsel stated that the court did not need to reach the exceptions. He went on to argue that in her opposition, Anne merely stated that there are genuine issues of material fact, but did not state what they are. He also pointed out that Anne had not attached any affidavits to her opposition. However, the failure of an opposing party to file opposing affidavits or other evidence does not automatically entitle the moving party to summary judgment. Sharp v. Harrell, 99-0737, p. 4 (La.App. 1st Cir.5/12/00), 762 So.2d 1119, 1121, writ denied, 00-2458 (La.11/3/00), 773 So.2d 150. The law is clear that in a motion for summary judgment, the burden to present evidence does not shift to the party opposing the motion until the moving party first presents evidence that no genuine issues of material fact exist. Sharp, 762 So.2d at 1122.
On appeal, Robert argues that he submitted evidence to show that the community had no interest in the contingent fee contract executed between his law corporation and the Mizells. Further, he argues, the record establishes that the asset belonged to the law corporation that was partitioned in the settlement agreement. Accordingly, he contends, the burden of proof shifted to Anne to submit evidence in support of her cause of action.
Anne's claim of lesion, however, was urged in the alternative, in the event the court determined that the Mizell suit is not an un-partitioned asset and that Robert did not fraudulently conceal the asset from her. Although the record reflects that Robert proved to the satisfaction of the trial court that the Mizell suit was a partitioned community asset, that finding alone did not show a lack of factual support of an essential element of Anne's claim of lesion. Lesion applies to those assets that were partitioned, but for less than fair value as specified in the civil code. See LSA-C.C. art. 814. We note that Robert admitted in his memorandum in support of summary judgment that the Mizell fee interest was relevant to a valuation of the corporation at the time the community terminated and/or when the agreement to partition was reached.
The essential elements of Anne's claim include proving the community property's true value and showing that she received value less than three-fourths of one-half of her share of the true value of the divided community property. McCarroll, 701 So.2d at 1285. Because Robert failed to show a lack of factual support for one of those elements, the burden never shifted to Anne to come forward with evidence to show that she would be able to meet her burden of proof at trial. See Sharp, 762 So.2d at 1122.
*175 Robert, in his memorandum in support of summary judgment, asserts that the partition resulted in a compromise intended to settle pending or potential litigation seeking judicial partition of the former community.
A transaction or compromise is defined as "an agreement between two or more persons, who, for preventing or putting an end to a lawsuit, adjust their differences by mutual consent, in the manner agreed on, and which every one of them prefers to the hope of gaining, balanced by the danger of losing." LSA-C.C. art. 3071. Under the law, a transaction or compromise, having between the interested parties a force equal to res judicata, may not be attacked on the basis of lesion. LSA-C.C. art. 3078; Dornier v. Live Oak Arabians, Inc., 602 So.2d 743, 746 (La.App. 1st Cir.), writ denied, 608 So.2d 177 (La.1992). Those community property partitions that have had court approval have been deemed a compromise and not subject to attack based on lesion. See, e.g., Lapeyrouse v. Lapeyrouse, 98-0271 (La.App. 1st Cir.2/19/99), 729 So.2d 682; Junca v. Junca, 98-1723 (La.App. 1st Cir.12/28/99), 747 So.2d 767. In Lapeyrouse, and Junca, the community property agreement was attached to a judgment and, by terms of the judgment, made a part thereof. This was not done in the instant case, and the extra-judicial partition is susceptible to attack of the basis of lesion. LSA-C. C. art. 814.
Dornier, cited in the majority opinion, is clearly distinguishable from the instant case because in Dornier it was clear that the agreement was to settle a lawsuit and was attached to and made part of the judgment dismissing Dornier's suit. No community property existed, and there was no community property available for distribution. Therefore, the agreement was a transaction or compromise under LSA-C.C. art. 3071. In the instant case, the agreement was clearly a voluntary partition between co-owners of community assets subject to attack on the basis of lesion.
Having determined that Robert did not meet his burden of proof on the motion for summary judgment, the only way that summary judgment on the basis of lesion could have been properly granted was for the trial court to have found that the partition, which was entered voluntarily and was neither read into the court record nor attached to a judgment of the court, constituted a transaction or compromise.
Anne's opposition to summary judgment does not address Robert's claim that the partition constituted a transaction or compromise. Nor does Anne address the issue on appeal. In his affidavit submitted in support of summary judgment, Robert attests that he and Anne "voluntarily partitioned and settled all matters" concerning their former community. The partition agreement states that, subject to the provisions of the partition, the parties have released and discharged the other from any and all claims the other party had against the other.
Although the partition agreement contains language to the effect that the parties intend to settle all claims against each other, it is evident that the primary purpose of the document is to partition the community property. A suit to partition the community property had not been filed. The record indicates that at the time of the partition, there was no legal proceeding between the parties as to the nature, character, or existence of the community property partitioned. In Joy v. Joy, 379 So.2d 816, 819 (La.App. 4th Cir. 1980), the Fourth Circuit Court of Appeal held that "[a] partition agreement, even *176 though it may have the qualities of a transaction or compromise, may nevertheless be attacked for lesion beyond one-fourth, as provided in [LSA-C.C. arts. 1397, 1398][2]." The Second Circuit Court of Appeal concurred with this holding in Gates v. Gates, 485 So.2d 114, 116-117 (La.App. 2nd Cir. 1986). See also Williamson v. Amilton, 13 La.Ann. 387 (1858). I respectfully submit that the partition agreement is an extra-attacked for lesion. I respectfully submit that the majority opinion is contrary to Joy, Gates, and Williamson, and creates a conflict on this issue among the circuits.
In conclusion, this appeal is from the grant of summary judgment. Among the claims dismissed by the grant of summary judgment was Anne's claim of lesion. I respectfully submit that the partition agreement was not a compromise and is therefore subject to attack for lesion. To prevail on summary judgment, Robert had the burden of showing a lack of factual support for either of the two elements of Anne's lesion claim. Robert did not meet that burden. Thus, the grant of summary judgment was improper as to the lesion claim.
Therefore, for the above reasons, I respectfully concur in part and dissent in part from the majority opinion.
NOTES
[1] Hon. Ian W. Claiborne, retired, is serving as judge pro tempore by special appointment of the Louisiana Supreme Court.
[2] Article 967 allows, but does not require, a trial court to refuse a motion for summary judgment or order a continuance to permit additional discovery if it appears from the opponent's affidavit that a party cannot present by affidavit facts essential to justify his opposition. Clark v. Favalora, 98-1802, p. 9 (La.App. 1 Cir. 9/24/99), 745 So.2d 666, 672-673.
[3] In light of our disposition on the issues of fraud and lesion, we need not address the issue of prescription raised by Anne in her third assignment of error.
[1] LSA-C.C. art. 814 states:

An extrajudicial partition may be rescinded on account of lesion if the value of the part received by a co-owner is less by more than one-fourth of the fair market value of the portion he should have received.
[2] LSA-C.C. art. 3078 states:

Transactions have, between the interested parties, a force equal to the authority of things adjudged. They cannot be attacked on account of any error in law or any lesion. But an error in calculation may always be corrected.
[3] LSA-C.C. art. 3071 states:

A transaction or compromise is an agreement between two or more persons, who, for preventing or putting an end to a lawsuit, adjust their differences by mutual consent, in the manner which they agree on, and which every one of them prefers to the hope of gaining, balanced by the danger of losing.
This contract must be either reduced into writing or recited in open court and capable of being transcribed from the record of the proceeding. The agreement recited in open court confers upon each of them the right of judicially enforcing its performance, although its substance may thereafter be written in a more convenient form.
[4] See 16 KATHERINE S. SPAHT & W. LEE HARGRAVE, LOUISIANA CIVIL LAW TREATISE: MATRIMONIAL REGIMES § 7.21 at 446-448 (2d ed. 1997), which states in part:

An extrajudicial partition, furthermore, is not governed by the law regulating compromise and transaction. Although a partition after termination of the community regime resembles a compromise or transaction it may be assailed for lesion. To do otherwise, according to the court in Joy v. Joy, would require that "... every partition agreement, even though it does not relate to community property, must be regarded as a transaction or compromise, entered into for the purpose of preventing a partition suit...." A partition, if categorized as a compromise, would be free from attack and "... would render Articles 1397, 1398, and 1861 of the Civil Code of no effect." ... If disputes arise in the interpretation of the partition agreement and the parties execute a compromise, the second agreement will be governed by the law of compromise, including res judicata. The law of compromise, specifically the principle of res judicata, has been applied where a partition agreement is incorporated in a judgment. (Footnotes omitted.)
[5] This language is almost identical to the language used in a partition agreement in Junca, supra.
[6] See LSA-C.C. art. 814 and art. 2591.
[1] On appeal, Anne does not raise the trial court's granting of summary judgment as to this issue.
[2] Acts 1991, No. 689, § 1, repealed LSA-C.C. arts. 1397, "Causes for rescission," and 1398, "Lesion beyond one-fourth." However, the essence of LSA-C.C. art. 1398 is embodied in LSA-C.C. art. 814. Glascock v. Glascock, 98-1031, p. 3 (La.App. 1st Cir.11/5/99), 746 So.2d 288, 289, writ not considered, XXXX-XXXX (La.2/4/00), 754 So.2d 219.