514 So.2d 186 (1987)
Louis V. delaVERGNE
v.
Hugues J. delaVERGNE, II, et al.
No. CA-7165.
Court of Appeal of Louisiana, Fourth Circuit.
October 7, 1987.
Rehearings Denied November 18, 1987.
*187 C. Ellis Henican, Henican, James & Cleveland, New Orleans, for defendants-appellants, Hugues J. delaVergne, II and Charles E. delaVergne, Jr.
Marcel Garsaud, Jr., Gordon, Arata, McCollam, Stuart & Duplantis, New Orleans, for plaintiff-appellee, Louis V. delaVergne.
Before GULOTTA, C.J., and GARRISON and WARD, JJ.
WARD, Judge.
Hugues J. delaVergne, III and Charles E. delaVergne, Jr. suspensively appeal a money judgment in favor of their brother, Louis V. delaVergne. Louis has answered the appeal and requested modifications of the judgment. The appeals arise from a suit in which Louis sued Hugues and Charles to rescind the partition of the family home, Villa delaVergne, an 87-acre estate in St. Tammany Parish, and to rescind agreements incidental to the partition, on the grounds of lesion and breach of fiduciary duty. In the suit Louis also sought an accounting and a share of the profits Hugues and Charles allegedly made by selling parcels of Villa delaVergne after the partition. Hugues and Charles excepted to the suit, asserting that the partition and incidental agreements constituted a compromise which was res judicata and hence could not be rescinded. In a reconventional demand Hugues and Charles sought damages caused by the notice of lis pendens Louis filed against Villa delaVergne and the expenses of their attorneys fees in this lawsuit.
After considering extensive testimony and documentary evidence, a Commissioner of the Civil District Court found insufficient proof of lesion, but recommended rescission of the partition because Hugues *188 and Charles, an attorney and executor, respectively, of their mother's succession, breached the fiduciary duty owed to Louis. Hugues and Charles filed exceptions to the Commissioner's report. Following a hearing and the filing of post-trial memoranda, the Trial Court granted judgment in favor of Louis delaVergne and denied the reconventional demand. In his reasons for judgment the Trial Judge stated that the agreement executed by the brothers was a voluntary partition of Villa delaVergne which incidentally partitioned other property and settled several lawsuits between the brothers. The Trial Judge agreed with the Commissioner that the evidence did not prove lesion. Because he found a partition rather than a compromise, the Trial Judge denied the exception of res judicata. He further found that prior to the partition agreement Hugues and Charles had received an appraisal and purchase offers for the property which they did not reveal to Louis, and that they bought Louis's 4/9 share of the property for an amount far below the value indicated by the appraisal and offers. The Judge held that Hugues and Charles, as officers of their mother's succession, had breached a fiduciary duty to disclose all material information to Louis as heir, legatee and co-attorney.
The Trial Judge, however, declined to follow the Commissioner's recommendation to rescind the partition and the other agreements between the parties. Instead, he awarded Louis damages, calculated by allowing Louis fictitiously to participate as 4/9 owner in Hugues and Charles's sales of the Villa delaVergne property which were made after Louis sold his share to his brothers. Louis was thus awarded 4/9 of the sales prices, plus 4/9 of the value of the acreage retained by Hugues and Charles, as appraised before the partition, less the amount Louis received from Hugues and Charles pursuant to the agreement. The damages, thus calculated, amounted to $807,555.70, and were awarded with legal interest from date of judicial demand.
In their appeal, Hugues and Charles reassert their contention that the brothers' agreements are a compromise which is res judicata and insusceptible of rescession.
They further contend that the Trial Judge should not have awarded damages since he found that the agreement was a partition but that lesion was not proved. They also argue that the Trial Court erred in finding that they were acting as Louis's fiduciaries. In the alternative, they contend that if Louis was harmed by their actions, the proper remedy is to set aside all agreements, not only the partition of Villa delaVergne. Furthermore, they argue that the damages award is improper because the petition did not plead special damages, and in any event, the amount awarded is not supported by the record.
Louis also appeals, requesting legal interest to run from the date that Hugues and Charles breached their fiduciary duty, rather than from the date of judicial demand, and further requesting attorney fees. Additionally, Louis urges that even if this Court finds that the brothers' agreements were a compromise, it can be set aside on the grounds of fraud or because material information was withheld. Also in the alternative, Louis asserts that, if we find that Hugues and Charles were not acting as fiduciaries in their capacities with their mother's succession, they were fiduciaries in their capacities as joint venturers with Louis in the development of Villa delaVergne.
The resolution of these factual and legal issues requires that we review in some detail the evidence which was before the Trial Court.

FACTUAL BACKGROUND
The mother of the three delaVergne brothers, Marcelle Menard delaVergne, widow of Charles E. delaVergne, died on September 20, 1975. At the time of her death, Hugues, Charles and Louis each owned a 5/18 interest in Villa delaVergne, and Mrs. delaVergne owned the remaining 3/18. Mrs. delaVergne left a will which, after making particular bequests, gave one-third of her property to each of her three sons. Her entire interest in Villa delaVergne was to be included in Louis's share. She named Charles and Gerard W. Barousse *189 executors; Hugues, Louis, and Ernest A. Carrere, Jr. were named as attorneys for the succession.
Following the opening of Mrs. delaVergne's succession in Orleans Parish her sons became embroiled in bitter disputes concerning the family property. In addition to several conflicts resulting in litigation within the succession proceedings, separate lawsuits were filed in Orleans and St. Tammany Parishes. Many of the disputes centered upon the disposition and possible commercial development of the Villa delaVergne acreage. These disputes culminated in 1977 when Hugues and Charles filed a suit in the 22nd Judicial District Court to partition Villa delaVergne by licitation. That Court ordered the partition, and the First Circuit Court of Appeal affirmed. delaVergne v. delaVergne, 361 So.2d 1234 (La.App. 1st Cir.1978). Writs were granted by the Supreme Court on October 26, 1978.
Negotiations among the brothers and their attorneys finally led to an agreement, executed on February 1, 1979, which provided that: (1) Louis agreed to sell to Hugues and Charles his entire interest in Villa delaVergne, for $285,000.00 cash, reserving only mineral rights and specified movables, the sale to take place within 10 days after the parties were put in possession of their mother's succession; (2) all parties agreed to "lend their best effort" toward closing that succession within 14 days; (3) Hugues and Charles agreed to transfer ownership of the "delaVergne manuscript" and a specified family portrait to Louis, and Louis agreed to transfer two other portraits to Hugues and Charles; (4) the parties agreed to privately auction jointly-owned movable property at Villa delaVergne; (5) Louis agreed to pay the Whitney National Bank approximately $2,800.00 in interest and to reimburse Hugues and Charles $2,700.00 for interest they had paid to Hibernia Bank; (6) the parties agreed to pay certain attorney fees chargeable to Mrs. delaVergne's succession in proportion to their shares of the succession; other fees would be borne by the brothers equally; (7) Louis agreed to sell to Charles, reserving mineral rights, his 1/12 share of a tract known as the Bayou Bonfouca property, for $10,000.00; (8) Hugues and Charles agreed to assume full responsibility for certain legal fees which the brothers had incurred jointly; (9) Louis and Hugues agreed to resign as reciprocal trustees for trusts of Mentab, Inc. stock which Mrs. delaVergne had established for her sons in her will; (10) except for the trusteeships of the Mentab trusts, the parties agreed to abide by the terms of Mrs. delaVergne's will and to waive any rights to collation; (11) Hugues agreed not to seek an accounting as to a $58,000.00 loan to Mrs. delaVergne's succession; and finally (12) all parties agreed to dismiss with prejudice all litigation between and among themselves, and Louis agreed to relinquish all control and rights in a lawsuit in which he was defendant, provided Hugues and Charles held him harmless both from any judgment rendered against him in the suit and for certain attorney fees incurred in the defense of the suit.
Pursuant to the February 1 agreement, the brothers were put into possession of Mrs. delaVergne's succession on February 21, 1979. On February 28, the sale of Louis's 4/9 share of Villa delaVergne to Hugues and Charles was executed. Louis received consideration totalling approximately $357,000.00. As a result of the provision of the February 1 agreement that the brothers would dismiss the lawsuits pending between and among themselves, five suits including the partition suit before the Supreme Court of Louisiana were ultimately dismissed.
During March of 1979, Hugues and Charles accepted third-party offers to purchase small tracts from the Villa delaVergne property at prices alleged by Louis of approximately $65,000.00 per acre. These offers stemmed from negotiations which Hugues and Charles and their real estate agent, Richard S. Waguespack, had been conducting with several prospective buyers before and during the period that they were also negotiating the partition of Villa delaVergne with Louis. Except for one occasion when Louis was allowed to peruse Waguespack's file during a court hearing in June 1978, Hugues and Charles *190 did not share with Louis any of Waguespack's proposals which included prices that Waguespack believed various parcels of Villa delaVergne would bring on the market. Hugues and Charles also did not communicate to Louis any of the offers they received, even though at the time, Louis owned 5/18 interest in the property and was legatee of his mother's 3/18 interest. The testimony of the brothers and of their attorneys indicates that Hugues and Charles's communication with Louis had gradually deteriorated in the years following Mrs. delaVergne's death. Hugues testified, furthermore, that after he filed the suit for partition of Villa delaVergne against Louis and the succession in 1977, he did not believe Louis was entitled to any information regarding the property.

HUGUES AND CHARLES'S ASSIGNED ERRORS
In their first assignment of error, Hugues and Charles contend that the Trial Judge erroneously found that the agreement of February 1, 1979 was a voluntary partition. They assert that the February 1 agreement, together with all of the agreements, property transfers, dismissals of lawsuits and other documents executed in connection with that agreement, constitute a transaction or compromise defined by La.C.C. art. 3071. As such, it is res judicata and cannot be rescinded for lesion. La. C.C. art. 3078. Louis responds to this argument with the jurisprudential rule that Articles 1397 and 1398, which allow rescission of partitions on account of lesion by one-fourth, provide an exception to the res judicata effect of compromises. Joy v. Joy, 379 So.2d 816 (La.App. 4th Cir.1980). Moreover, Louis argues, Article 1402 provides that recission of partitions takes place against all acts "which tend to the division of property between co-heirs, whether such acts be called sales, exchanges, compromises, or by any other name."
We agree that some agreementscalled sales, exchanges, compromises or whatever (the February 1 agreement was captioned simply "Agreement")may in actuality be partitions and rightly subject to rescission for lesion. Nevertheless, it is abundantly clear from the four corners of the February 1 agreement that it is far more than a voluntary partition of the succession property. Even were the agreement susceptible of interpretation as a mere partition, the extrinsic evidence of the circumstances surrounding the confection of the agreement brings it within the codal definition of a compromise between and among the delaVergne brothers who "... for preventing or putting an end to a lawsuit, adjust[ed] their differences by mutual consent, in the manner which they agree[d] on, and which every one of them prefer[red] to the hope of gaining, balanced by the danger of losing." La.C.C. art. 3071.
Common sense dictates that an agreement such as that entered into by the delaVergnes cannot be subject to a claim that it is lesionary because it contains many provisions, most notably the disposition of property of sentimental value and the dismissals of lawsuits, to which it is practically impossible to assign a monetary value. Moreover, even if the agreement were subject to a claim of lesion, the value of all the property covered by the agreement, including legal causes of action and defenses, would have to be ascertaineda Herculean task not attempted by the parties or by the Trial Court. It was for this reason, we assume, that the Trial Court found that, although the agreement was a voluntary partition, there was "insufficient evidence to determine lesion."
Although we have found a compromise which is not subject to a claim of lesion, this finding does not mandate the result urged by Hugues and Charles, that is, that Louis has no remedy.
The Trial Court held that in confecting the February 1 agreement, Hugues and Charles were subject to Article 3191 of the Code of Civil Procedure:
A succesion representative is a fiduciary with respect to the succession, and shall have the duty of collecting, preserving, and managing the property of the succession in accordance with law. He shall act at all times as a prudent administrator, *191 and shall be personally responsible for all damages resulting from his failure so to act.
Hugues and Charles argue, however, that they were not acting in their capacities as officers of Mrs. delaVergne's succession when they received the purchase offers and Waguespack's opinions as to the value of Villa delaVergne. Hence, they argue, they breached no duty to disclose the information to Louis. Hugues and Charles admit that the succession was not closed and its officers not discharged until after they received Waguespack's proposals and the purchase offers, and after they entered into the February 1 agreement to buy Louis's share of the property. Nonetheless, Hugues and Charles contend that they owed no fiduciary duty because (1) the succession was closed seven days before the execution of the sale of Louis's interest, and during that seven-day period, Louis's attorney negotiated a $50,000.00 increase in the price; (2) Hugues and Charles negotiated and confected the agreement in their capacities as Louis's co-heirs and co-legatees rather than as officers of the succession; (3) the brothers had adverse economic interests and the negotiations were conducted entirely through their attorneys, thus the agreement was an arm's length transaction; and finally (4) the greater portion of Louis's interest in Villa delaVergne, 5/18, did not come from his mother's succession, from which he derived only a 3/18 interest, and the predominate 5/18 interest should control the relationships and duties among the brothers.
We find these arguments unpersuasive in light of the high duty a fiduciary owes his principal. At a minimum, the officer of a succession has the duty to keep heirs informed and to preserve the succession property for the heirs and "certainly [has] a duty not to contrive a method of depriving the legal heirs of their claim to ownership." Langendorf v. Administrators of the Tulane Education Fund, 361 So.2d 905 (La.App. 4th Cir.), writs refused, 363 So.2d 1384 (La.1978). And, finally, a fiduciary who acquires property from his principal bears the burden of establishing that the transaction was at arm's length. Noe v. Roussel, 310 So.2d 806, 818 (La. 1975). Hugues and Charles have not carried this burden of proof. Their arguments of mitigating circumstances indicate only that this case presents an unusual situation, not that they should be excused from the duty owed to Louis. The argument that the succession was closed and Hugues and Charles's duties terminated before the February 28 sale is meritless because Hugues and Charles were serving as officers of the succession when they received Waguespack's proposals and the purchase offers pertinent to the value of Villa delaVergne, and when they induced Louis to sell his share of the property for a specified price without disclosing that pertinent information to him. It is irrelevant that Hugues and Charles's fiduciary duty to disclose was terminated after it was breached. It is also irrelevant that Hugues and Charles were Louis's co-heirs and co-legatees, and that the brothers' economic interests were adverse. Hugues and Charles were, in fact and in law, officers of the succession; their other capacities and relationships with the succession and with Louis do not detract from their fiduciary duty as officers of the succession. If Hugues and Charles believed that their economic interests were adverse to their principal, Louis, they should have resigned as officers of the succession rather than withholding information from Louis and acting in conflict with his interests. Rather than resigning, however, Hugues and Charles successfully resisted Louis's attempts to have them disqualified and removed from their positions. We also reject Hughes and Charles's argument that their duty is limited by the 3/18 interest of Villa delaVergne that Louis received from the succession, as opposed to the 5/18 he already owned. We do not believe that the predominate 5/18 interest which Louis held as owner while the succession was under administration excuses Hugues and Charles from their fiduciary duty, because they used their positions as officers of the succession to induce Louis to sell, not only his succession interest, but his entire interest in Villa delaVergne.
*192 Having found a breach of fiduciary duty, we now consider the assignments of error which address the remedy of damages granted by the Trial Court. We first hold that there is no error in the Trial Court's refusal to rescind either the sale of Louis's interest in Villa delaVergne to Hugues and Charles or the entire February 1 agreement. The Trial Court judgment and our decision are not based upon findings of a lesionary partition or of a fraudulent compromisefor which rescission might be the proper remedybut upon breach of fiduciary duty. Code of Civil Procedure Article 3191 provides that a succession representative who fails to act as a prudent administrator of succession property "shall be personally responsible for all damages resulting from his failure to so act." We believe an award of damages is appropriate under the circumstances of this case. See La.C.C.P. art. 862, and Noe v. Roussel, 310 So.2d 806, 823 (La.1975); Langendorf v. Administrators of the Tulane Education Fund, 361 So.2d 905, 909-910 (La.App. 4th Cir.1978); and Succession of Irving, 436 So.2d 1263, 1265 (La.App. 1st Cir.) writ denied, 442 So.2d 452 (La.1983), analogous cases in which damages were awarded for property lost or sold at less than fair market value by fiduciaries in breach of their obligation.
Hugues and Charles assert that the petition did not pray for damages as required by La.C.C.P. art. 861 and as a consequence, Louis is entitled to none. An examination of the petition reveals that, in addition to claiming a right to rescission of the agreements, the petition asserted: "Plaintiff is further entitled to an accounting for and reimbursement of his proportionate share of the profits from the sales of the parcels of Villa delaVergne property subsequent to his transfer of his interest to defendants...." Finding this prayer sufficient to support an award of damages, we turn to the question of the amount of the judgment in Louis's favor.
The Trial Court explained and itemized its judgment.
Using Richard Waguespack's appraisal of August, 1978, Louis delaVergne is entitled to damages measured by 4/9ths of the sales which took place combined with his 4/9ths interest in the unsold acreage valued under Waguespack's appraisal reduced by the cash he received and the extent of loan forgiveness.

Value of Sales of 17.59 acres $ 847,539.00
Value of House on 20 acres as $ 300.000.00
per Waguespack appraisal
(retained by Louis)
Value of remaining 49.409 acres at
average of $29,806.54 per acre as
per Waguespack appraisal
(retained by Louis) $1,472,711.33
Louis' 4/9 interest
 $2,620,250.33
less cash...... $285,000.00 -$1,164,555.00
less loan
forgiveness .. $72,000.00 -$ 357,000.00
TOTAL DUE LOUIS for 4/9 share $ 807,555.70

The Court therefore awards Louis delaVergne damages in the sum of $807,555.70 for his 4/9ths share together with legal interest from date of judicial demand and for all costs of these proceedings.
In assessing and calculating these damages, the Trial Judge utilized two sources: offers to purchase choice parcels of Villa delaVergne which had been accepted by Hugues and Charles shortly before and after their purchase of Louis's share; and for the remaining unsold portion of the estate, a letter to Hugues from Waguespack, dated August 4, 1978, which was one of Waguespack's series of proposals regarding sales of the property. Hugues and Charles allege many specific deficiencies in this evidence in appealing the quantum of damages.
The purchase offers and the Waguespack letter of August 4, 1978, referred to in the judgment as the "Waguespack appraisal" were not, of course, the only evidence presented of the value of Villa delaVergne. Although the case was tried primarily as a suit for lesion rather than one for damages, much of the evidence focused upon the value of Villa delaVergne, with Louis attempting to prove a greater, and Hugues and Charles a lesser value. In addition to Waguespack's testimony and documentary evidence, competing appraisals were offered *193 by expert appraisers for both parites. These detailed appraisals varied greatly, depending upon (1) the method of appraisal, for example, the developmental approach versus the use of sales of comparable properties; and (2) the expert's opinion of the highest and best use of the property, that is, sale as one large estate versus subdivision into small homesites. Viewing this mass of conflicting expert testimony, we cannot say that the Trial Judge abused his great discretion when he calculated damages based upon actual sales and Waguespack's proposal letter. Accordingly, we reject Hughes and Charles's arguments which attack the quantum of damages.
Finally, Hugues and Charles contend that the Trial Court erred in denying their reconventional demand in which they sought payment of their attorney fees and damages from Louis to compensate them for delays in their commercial development of Villa delaVergne, allegely caused by the lis pendens which Louis filed against the property. Because Louis has prevailed in his lawsuit, both in the Trial Court and on appeal, we affirm the denial of the claims made in the reconventional demand.

LOUIS'S ASSIGNED ERRORS
Louis filed an answer to the appeal seeking amendments to the judgment: (1) to provide that interest be computed from the date of Hugues and Charles's breach of fiduciary duty; and (2) to award his attorney fees.
The judgment provided for interest to run from date of judicial demand, that is, the date Louis filed suit, January 31, 1983. Louis contends that he will be adequately compensated for the harm inflicted upon him only if the damages include interest measured from the first breach of fiduciary duty which occurred, Louis claims, when Hugues and Charles failed to inform him of Waguespack's proposal of August 4, 1978. We agree that Louis is entitled to interest which accrued before he filed suit. Nonetheless, we believe the proper commencement date for the running of interest is February 28, 1979, the date that Louis received the inadequate consideration for the property he conveyed to his brothers. We choose this date because the damages compensate Louis for the additional amount he should have received in the February 28, 1979 sale. Because he has not had the use of that additional amount, he is entitled not only to the additional amount in damages, but also to compensation for the use he should have had of that amountinterest. This result is consistent with the Langendorf case, although it is cited by Louis for the rule that interest should run from the date of the breach. In Langendorf, the Court found the breach of fiduciary duty to be simultaneous with the accrual of damages, which is distinguishable from this case because Louis had no damages until he actually sold the property at less than its value.
Louis's petition did not pray for attorney fees, and the Trial Court judgment does not mention attorney fees. Louis argues on appeal that the "exceptional circumstances" of this case warrant an award of attorney fees. In support of his argument, Louis again cites the Langendorf case. We again find that it does not support Louis's position, for reasons explained in the opinion itself. The pertinent discussion from Langendorf states:
Attorney's fees are generally awarded pursuant to a statute or a contract. Fees have been awarded as damages under exceptional circumstances, such as in Ramp v. St. Paul Fire & Marine Ins. Co., 263 La. 774, 269 So.2d 239 (1972), in which the attorney's fees incurred to correct another attorney's professional error was awarded as an item of damages in a legal malpractice action.
The present case is not a legal malpractice case, and the breach of duty was not committed by a lawyer in a contractual relationship with plaintiffs, but by a succession representative in a fiduciary relationship.
361 So.2d at 910.
Accordingly, as did the Court in Langendorf we deny the claim for attorney fees.

*194 DECREE
For the foregoing reasons, the judgment of the Trial Court is affirmed as amended to award Louis V. delaVergne interest on the judgment from February 28, 1979 until paid and all costs of these proceedings in the Trial Court and on appeal.
AFFIRMED AS AMENDED.