745 So.2d 1271 (1999)
Louis V. DELA VERGNE
v.
Hughes J. DELA VERGNE, III, and Charles E. dela Vergne, Jr.
No. 99-CA-0364.
Court of Appeal of Louisiana, Fourth Circuit.
November 17, 1999.
*1272 Kevin O'Bryon, Leake, Andersson & Mann, New Orleans, Louisiana, Counsel for Plaintiff-Appellee.
George F. Riess, Polack, Rosenberg, Endom & Riess, L.L.P., New Orleans, Louisiana, Counsel for Defendant-Appellant.
Court composed of Judge WILLIAM H. BYRNES, III, Judge JOAN BERNARD ARMSTRONG, and Judge DENNIS R. BAGNERIS, Sr.
BYRNES, Judge.
On June 24, 1986, judgment was rendered by the trial court in favor of the plaintiff-appellee, Louis dela Vergne, against his brothers, Hughes J. dela Vergne, II[1], and the defendant-appellant, Charles E. dela Vergne, Jr., in the sum of $807,555.70, for breach of the fiduciary duty owed by Charles and Hughes to Louis in connection with the purchase by Charles and Hugues from Louis of certain family properties. The trial court judgment awarded Louis interest from date of judicial demand. On appeal this Court amended the judgment to increase the interest award to Louis by dating it from the date of the sale rather than the date of judicial demand, and as amended, affirmed the judgment. dela Vergne v. dela Vergne, 514 So.2d 186 (La.App. 4 Cir.1987), writ den. 519 So.2d 118 (La.1988).
In an attempt to execute upon the judgment, in 1997, Louis brought proceedings to seize Charles' principal and income interest in the Schmidt-dela Verne Trust. Charles sought to enjoin Louis. A hearing was held on May 21, 1997. Pursuant to that hearing, two judgments were rendered which are the subject of this appeal.

Should This Appeal Be Dismissed?
One judgment states that it concerns Charles' application for a permanent injunction and that it was rendered in open court on May 21, 1997, but was read and signed in Chambers on June 12, 1997. This judgment dissolved a previously issued preliminary injunction; permanently enjoined the seizure of Charles' interest in the trust principal; and permanently enjoined the seizure of Charles' interest in the trust income "except that (where the income from the Trust exceeds $12.00 per week) [Louis] may reach by seizure an aggregate amount of 10% of the income due or to accrue to Charles E. dela Vergne, Jr., and, in addition, he may seize all income due or to accrue in the future to Charles E. dela Vergne, Jr. in excess of $5,000.00 per annum, in accordance with La. R.S. 9:1923(A)(1) and (2) (repealed)..."
The second judgment states that it concerns Louis' motion "for order based on garnishment answers or alternatively, to traverse garnishee's answers," and that it was read, rendered and signed in Chambers on June 16, 1997. In this judgment the Schmidt-dela Vergne trust was ordered to pay over that portion of Charles' income interest not protected by the judgment of June 12, 1997 described in the previous paragraph. Thus, the second judgment provides for the implementation of Louis' collection efforts to the extent defined by the judgment of June 12, 1997.
Charles filed a "Petition and Order for Suspensive Appeal" expressing a desire to appeal from the judgment of June 16, 1997. The judgment of June 12, 1997 is not mentioned in the Petition and Order for Suspensive Appeal. The trial court rendered a judgment dated May 13, 1998, converting the suspensive appeal to a devolutive *1273 appeal. The conversion of the appeal from suspensive to devolutive is not an issue in this appeal. The original petition and order for appeal was filed within sixty days of June 12, 1997, well within the devolutive appeal time for both the judgment of June 12 and that of June 16.
Louis contends that Charles' appeal should be dismissed because "it is nothing more than a collateral attack on the judgment on injunction [dated June 12, 1997], which is final and unappealable." Louis argues that the June 16, 1997 "Judgment on Garnishment" is not a final judgment, but merely one in aid of the June 12, 1997 judgment, which, Louis contends, is the only final judgment.
Appeals are favored. The judgments of June 12, 1997 and June 16, 1997 arose out of the same hearing and complement each other. The issue which Charles raises on appeal, i.e., whether his interest in the trust is subject to seizure, applies equally to both judgments. Charles' argument is the same as to both judgments. Louis cannot claim that he was confused or misled as to the nature of the appeal. Likewise, Louis' arguments concerning his entitlement to seize Charles' trust assets are the same regardless of which judgment is at issue. Louis can claim no prejudice. His preparation and argument for the appeal of either judgment would be the same as for the other, or for both. The determination of this issue for one judgment would apply equally to the other. Where the two judgments are so inextricably interwoven as these two judgments are on the issue before this Court, this Court will assume that to appeal one judgment is to appeal the other, thereby dispensing with the necessity of delving into the casuistry of which of the two is final.
Should LSA-R.S. 9:2005(3), which was not in effect at the time the trust was created, but which was in effect at the time Louis originally brought this claim and at all times since then, be applicable?
It is undisputed that Charles' interest in the Schmidt-dela Vergne Trust is subject to "spendthrift" provisions which limit the rights of creditors to levy on his beneficial interest.
LSA-R.S. 9:2005(3) gives the trial court the discretion to:
"permit seizure of any portion of the beneficiary's interest in Trust income and principal in its discretion and as may be just under the circumstances if the claim is based upon a judgment for:
(3) An offense or quasi offense committed by the beneficiary ... [Emphasis added.]
It is undisputed that the trust in question went into effect several years prior to the effective date of the language quoted above from LSA-R.S. 9:2005(3). But LSA-R.S. 9:2005(3) was in effect at the time Louis brought his initial action during the 1980's. It continued to be in effect at the time the money judgment which Louis is seeking to collect was rendered. It was also in effect at the time the judgments which are the subject of this appeal were rendered. LSA-R.S. 9:2005(3) is still in effect today. At the time the trust in question was established, the applicable law was found in former LSA-R.S. 9:1923, which differed in pertinent part from LSA-R.S. 9:2005(3) in that it provided for invasion of income only and employed the term "tort" instead of "offense or quasi offense." Former LSA-R.S. 9:1323 A(1) permitted the seizure of income in excess of $5,000.00 per annum regardless of the nature of the obligation. Former LSA-R.S. 9:1323 A(2) also permitted seizure of 10% of income in excess of $12.00 per week regardless of the nature of the obligation. The trial court elected to apply the provisions of former LSA-R.S. 9:1923 A(1) & (2) in determining the amount of Charles' trust income Louis could seize. The trial court did not apply LSA-R.S. 9:1923 A(3) which permitted the court to allow the seizure of income in the execution of a judgment based on a tort in an amount *1274 determined by the court to be just under the circumstances, i.e., an amount that could conceivably exceed the limitations of former LSA-R.S. 9:1923 A(1) & (2) depending on how the court chose to exercise its discretion.
Charles contends that it was error for the trial court to apply former LSA-R.S. 9:1323 A(1) & (2) in deciding this case. Charles asserts that LSA-R.S. 9:2005(3) limiting the seizure of trust income as well as principal to judgments based on offenses or quasi offenses should be given retroactive effect to the Schmidt-dela Vergne Trust. Louis counters that such retroactive application would constitute an unconstitutional impairment of the contractual obligations, the Schmidt-dela Vergne trust being a contract.
In order to allow the plaintiff to avail himself of the benefits of LSA-R.S. 9:2005(3) we would have to find that LSA-R.S. 9:2005(3) can be applied to a trust that was created prior to the effective date of the enactment of LSA-R.S. 9:2005(3); and that the actions upon which the plaintiffs judgment is based constituted an offense (or tort under former LSA-R.S. 9:1923) independent of the fiduciary relationship between the defendants and the plaintiff; or that any violation of a fiduciary duty is simultaneously an offense within the intendment of that statute.
We find that LSA-R.S. 9:2005(3) has retroactive application. Compare Hooter v. Wilson, 273 So.2d 516 (La.1973), where an increase in the amount exempt from garnishment was held to be remedial and retroactive. The enactment of LSA-R.S. 9:2005(3) did not divest Charles of any vested right to trust principal and income. LSA-R.S. 9:2005(3) is remedial in nature as applied to the facts of this case. It in no way alters the award made to Louis in the original judgment. Therefore, it should be applied retroactively.
Succession of Simms, 250 La. 177, 195 So.2d 114, cert. den., reh. den. sub. Nom. Kitchen v. Reese, 389 U.S. 850, 964, 88 S.Ct. 47, 320, 19 L.Ed.2d 120, 380 (1967), cited by Louis is inapposite. In Simms the Louisiana Supreme Court held that the vested ownership interest of an heir could not be altered by subsequently enacted trust legislation. LSA-R.S. 9:2005(3) does not alter Charles' interest in the income and principal of the trust property. It merely alters the ability of his creditors to levy on that property.
Should Charles' breach of fiduciary duty to Louis be treated as an "offense" within the intendment of LSA-R.S. 9:2005(3)?
Charles contends that the judgment which Louis seeks to execute against him is based on a breach of fiduciary duty, not fraud or an offense, and that the two concepts are mutually exclusive. LSA-R.S. 9:2005(3) refers only to offenses, not to breaches of fiduciary duties.
In support of the contention that a breach of fiduciary duty does not constitute an offense, Charles notes that the two have different prescriptive periods.
Claims for offenses prescribe in one year. LSA-C.C. art. 3492. LSA-C.C. art. 3492 uses the term "delict" as a synonym for "offense." The Revision Comment under LSA-C.C. art. 3492 states that it does not change the law from former LSA-C.C. art. 3536 which employed the term "offense" instead of "delict."
LSA-C.C. art. 3499 states that:
Unless otherwise provided by legislation, a personal action is subject to a liberative prescription of ten years.
LSA-C.C. art. 3499 supercedes former LSA-C.C. art. 3544 which read:
In general, all personal actions, except those before enumerated, are prescribed by ten years.
Former LSA-C.C. art. 3544 was in effect at the time Louis' cause of action arose in 1979. Regardless, the revision comment under LSA-C.C. art. 3499 states that:

*1275 (a) This Article reproduces the substance of Article 3544 of the Louisiana Civil Code of 1870. It does not change the law.
Therefore, cases decided under current LSA-C.C. art. 3499 are authority for how we should deal with causes of actions arising under former LSA-C.C. art. 3544.
Therefore, if a cause of action is considered to be a delictual action, i.e., an "offense" or tort, under LSA-C.C. art. 3492 it cannot also be considered an LSA-C.C. art. 3499 personal action because LSA-C.C. art. 3499 does not apply where the legislature has provided another prescriptive period.
Breaches of fiduciary duty are considered personal actions (as are contractual actions) subject to the ten year prescription under LSA-C.C. art. 3499. Simmons v. Templeton, 97-2349 (La.App. 4 Cir. 11/10/98); 723 So.2d 1009, 1013, writ den. 98-3050 & 98-3060 (La.2/5/99); 738 So.2d 4, 5, 1999 WL 58217 & 58260.
In Pineda v. Ruppel, 94-136 (La.App. 5 Cir. 6/28/94), 639 So.2d 858, the court stated:
The prescriptive period for actions based on breaches of a fiduciary duty and for an accounting of the property held by the fiduciary is ten years. LSA-C.C. art. 3499; Spruiell v. Ludwig[,] 568 So.2d 133 (La.App. 5th Cir. 1993). Delictual actions are subject to a liberative prescription of one year which commences to run from the day injury or damage is sustained. LSA-C.C. art. 3492.
The nature of a cause of action must be determined before it can be decided which prescriptive term is applicable. Hampton v. Hibernia National Bank, 598 So.2d 502 (La.App. 2nd Cir.1992); State of Louisiana, Department of Highways v. City of Pineville, 403 So.2d 49 (La.1981). The character of an action disclosed in the pleadings determines the prescriptive period applicable to that action. Star[n]s v. Emmons, 538 So.2d 275 (La.1989).
Plaintiff's petition alleges facts which indicate that the defendants wrongfully exercised authority over the funds of the interdict. These allegations are delictual in nature and as such are subject to the one year prescriptive period under LSA-C.C. art. 3492. Plaintiff's petition also alleges that the defendants failed to faithfully discharge their duties and obligations as curator and under-curator of the interdict with respect to the settlement and the funds obtained in the settlement, their failure to use the funds for the benefit of the interdict, and their failure to account for the funds and assets of the interdict. Therefore, those allegations are subject to the liberative period of ten years under LSA-C.C. art. 3499.
Thus Pineda stands for the proposition that some breaches of fiduciary must be classified as delictual while others are simply breaches of fiduciary duty. Pineda implies that the two categories are mutually exclusive as does LSA-C.C. art. 3499.
In Beckstrom v. Parnell, 97-1200 (La. App. 1 Cir. 5/15/98); 714 So.2d 188, disapproved on rehearing 97-1200, p. 8 (La. App. 1 Cir. 11/6/98); 730 So.2d 942, 947, the court stated that:
A suit for breach of fiduciary duty is generally a personal action with a 10 year prescriptive period. LSA-C.C. art. 3499. However, courts must consider the underlying claim to determine if the action is indeed one for breach of fiduciary duty which is governed by the 10 year prescriptive period or merely a suit against a fiduciary for negligence which is governed by the one year prescriptive period. [Citations to federal cases omitted.]
The necessary implication of this language in Beckstrom is that a fiduciary's simple negligence should be treated as an offense subject to a one year prescriptive period, while deliberate actions, such as fraud, misrepresentation or conversion *1276 would be subject to the ten year prescriptive period. Such an approach has in its favor the fact that it would permit greater accountability for deliberate acts.
The distinction between damages ex delicto and ex contractu is that the latter ensue from the breach of a special obligation, and the former from the violation of a general duty. Aetna Life and Cas. Co. v. Dotson, 346 So.2d 762 (La.App. 1 Cir.1977), writ den.349 So.2d 1272; City of New Orleans v. Southern Bank, 31 La. Ann. 560 (1879). The breach of a fiduciary duty is the breach of a special obligation, although the same act may constitute the breach of a general obligation as well. The essence of the fiduciary duty lies in the special relationship between the parties. Beckstrom v. Parnell, supra. It is the duty of loyalty which distinguishes the fiduciary relationship. Id.
We find that "offense or quasi offense" as used in LSA-R.S. 9:2005(3) refers to that section of the Civil Code entitled "Of Offenses And Quasi Offenses", LSA-C.C. art. 2315, et seq. But we believe that there may be those instances where a certain act may constitute a breach of fiduciary duty, and at the same time may be considered to be an offense within the intendment of the provisions of LSA-R.S. 9:2005(3) quoted above. Facts forming the basis of a cause of action may afford a plaintiff concurrent remedies (contractual/quasi contractual or delictual/quasi delictual). Aetna Life & Cas. Co. v. Dotson, supra.
But in Succession of Davis, 463 So.2d 723 (La.App. 4 Cir.1985), this Court held that, where an heir claimed that the succession representative perpetrated a fraud upon her by purchasing from the heir shares in a family corporation at only 20% of their true value the claim was in the nature of a breach of contract or fiduciary obligation and the ten-year prescriptive period applied, rather than the one-year prescriptive period applicable to offenses. The issue of whether the actions of the succession representative could be considered to be an offense under LSA-R.S. 9:2005(3) was not before the Court. Succession of Davis was not a decision on the merits. The opinion of this Court in Succession of Davis states that the plaintiff alleges "that she was the victim of fraud and misrepresentation."
We do not believe that it was the intention of the legislature in enacting LSA-R.S. 9:2005(3) to give fiduciaries a greater protection from seizure than would be afforded to non-fiduciaries committing the same act. For example, were a fiduciary to commit an act which would constitute fraud if committed by a non-fiduciary, that fiduciary should not be afforded greater protection from the fraud victim than would be permitted to a non-fiduciary third party who commits the same act of fraud. Fiduciaries are consistently held to higher standards of conduct and accountability than are non-fiduciary third parties and LSA-R.S. 9:2005(3) was not intended to protect fiduciaries. Because of this higher standard of duty owed by fiduciaries, a strong argument can also be made that as a matter of public policy, where a fiduciary breaches that duty by fraud, such fraud should be classified as an "offense" under LSA-R.S. 9:2005(3), even though the same act or omission might not constitute fraud if committed in reference to one to whom no fiduciary duty is owed.
After reviewing the foregoing cases and others, no definitive guidelines or principles emerge as to how to distinguish between an offense and a breach of fiduciary duty. Nor do we find a definitive analysis of the requirement found in LSA-C.C. art. 3499 that the ten year prescriptive period applies only where the legislature has provided no other period. Fraud and misrepresentation are generally considered offenses, delicts or torts. We conclude that they certainly should be treated as offenses for purposes of LSA-R.S. 9:2005(3). As we stated earlier, we cannot believe that the legislature intended to provide for the recovery from a spend-thrift *1277 trust of a fiduciary guilty of only simple unintentional negligence in the performance of some technical duty, while protecting the trust assets of the fiduciary who commits acts of fraud, misrepresentation, or conversion (theft).
As noted at the beginning of this opinion, this Court's previous decision in delaVergne v. delaVergne, 514 So.2d 186 (La. App. 4 Cir.1987), held for the plaintiff, Louis dela Vergne, based on a finding that the defendants, Hughes and Charles dela Vergne, had violated their fiduciary duty to Louis in connection with the sale of certain family property from Louis to Hugues and Charles for substantially less than what Charles and Hugues knew it to be worth. Hugues was the attorney for the succession of their mother and Charles was the executor. There was no finding by this Court of fraud although the reported opinion of this Court indicates that Louis alleged fraud in the alternative. Id. at p. 188.
The liability found in this Court's prior decision in dela Vergne v. dela Vergne, supra, is based entirely on the fiduciary relationship of the defendants to the plaintiff.
The crux of the written reasons in support of the original trial court judgment rendered on June 24, 1986 is that Louis, "discovered that Charles and Hugues knew and did not reveal to Louis that third parties were willing to buy the property at a far greater proportionate price than that paid to Louis for his interest." The trial court judgment states that it is rendered in favor of the plaintiff "for the written reasons assigned" and those written reasons refer to fiduciary duty and the breach thereof in several places, but no mention is made of fraud, tort, or offense.
The transcript of the May 21, 1997 proceedings upon which the judgments that form the basis of this appeal are founded, shows that the trial judge stated that Charles' actions constituted fraud which Louis argues should be considered to be an offense or a tort. However, what the trial judge may have said in the course of discussion does not represent his ultimate findings. The judgments of June 12 and June 16 rendered pursuant to the May 21 hearing grant Louis the right to seize Charles' trust income only to the extent permitted by former LSA-R.S. 9:1923 A(1) & (2). We believe that it is significant that the trial judge refrained from exercising the discretion afforded the court under LSA-R.S. 9:1923 A(3) to permit additional seizures of income where the claim is based on "tort," i.e., an offense. The trial court's failure to permit Louis to seize trust income based on tort implies that the trial court agreed with Charles' argument that the record will not support a finding that his breach of fiduciary duty was an offense or tort. In other words, although the trial judge mentioned during the May 21 proceedings that Charles' actions were fraudulent and tortious, we infer that he ultimately made no such findings by the time he rendered the judgments offering Louis no relief based on tort.
As neither the trial court's original money judgment, nor the opinion of this Court amending and affirming that judgment, nor the judgments of June 12 and June 16 were based on anything other than the violation of Charles' fiduciary duty to Louis, we are unable to find as a matter of fact that Louis' claim constitutes an "offense" under LSA-R.S. 9:2005(3) or a "tort" under former LSA-R.S. 9:1923.
In the instant case, where Charles and Hugues failed to disclose the true value of the property they purchased from Louis one could argue that they it was a merely passive failure to disclose that would not have constituted a fraud or misrepresentation had they been purchasing at arms length from an unrelated third party. A fraud or misrepresentation would be a violation of a general duty even in the absence of a fiduciary relationship. According to this line of reasoning, there was no violation of a general duty owed to Louis which would be considered an offense, delict *1278 or tort, only a violation of special duty arising out of the fiduciary relationship.
However, we feel that the better view is that in view of the fiduciary relationship that existed between the parties, there existed as a matter of law an implicit representation of value upon which Louis was entitled to rely when Charles and Hugues offered to purchase the succession property from him. Because Charles knew that the purchase price was less than the true value, he was guilty of more than just a passive failure to disclose; when he offered that price it was tantamount to affirmatively misrepresenting the value of the property to Charles. We find such a representation to be an "offense" within the intendment of LSA-R.S. 9:2005(3). As we find that this misrepresentation exists as a matter of law, we are not bound by the limitations on our right to go behind the factual bases of the original judgment of the trial court, the previous opinion of this Court, as well as the judgments of June 12 and June 16, 1997, none of which found as a matter of fact that there was any fraud or misrepresentation.
However, in deciding to treat Charles' actions as an offense, that right should be subject to the one year prescriptive period for offenses.
Louis's money judgment is based on his sale of succession property to Charles and Hugues on February 28, 1979. It appears that Louis did not file suit against Charles and Hugues until more than one year, but less than ten years after the sale. This created no prescriptive problems where the award was based on a violation of fiduciary duty that would not prescribe prior to the expiration of ten years.
However, had the claim been based on the one year prescriptive period for offenses, it would have prescribed, assuming that contra non valentem did not prevent prescription from running. When LSA-R.S. 9:2005(3) refers to "offenses and quasi offenses" it contemplates actions subject to the one-year prescriptive period. Assuming that Louis' claim could be treated as both an offense and a personal action, it raises the question of when and how to assert the one year prescriptive period against the offense aspect of the claim for LSA-R.S. 9:2005(3) when dealing with facts such as those of the instant case.
Moreover, although Charles has alluded to the one year prescriptive period in argument, to date he has filed no formal exception of prescription. This Court may not supply the plea of prescription. LSA-C.C.P. art. 927 B. The plea of prescription must be specially pleaded. Id. To do so, a pleading must be filed in writing. Rapp v. City of New Orleans, 95-1638 (La.App. 4 Cir. 9/18/96); 681 So.2d 433; writ den. 96-2925 (La.1/24/97), 686 So.2d 868; LaBove v. Resource Transp. Co., 625 So.2d 583, 587 (La.App. 3 Cir.1993); Hyde v. Hibernia Nat. Bank in Jefferson Parish, 584 So.2d 1181 (La.App. 5 Cir.1991); Bergeron v. Houma Hosp. Corp. of Sisters of St. Joseph, 514 So.2d 1192 (La.App. 1 Cir. 1987), writ refused 517 So.2d 812. Therefore, at this stage of the proceedings we cannot conclude that Louis' claim has prescribed.
LSA-R.S. 9:2005(3) gives the trial court the discretion to "permit seizure of any portion of the beneficiary's interest in trust income and principal ... as may be just under the circumstances ..." The trial judge failed to exercise that discretion as he instead applied the mechanical formula found in former LSA-R.S. 9:1923. The record lacks sufficient information concerning the value of Charles' interest in the trust as well as his assets and income outside of the trust to enable this Court to exercise the discretion of fixing the amount of the award, if any, that would be just under the circumstances. Therefore, it is necessary that we remand the case to the trial court for that purpose.

DECREE
For the foregoing reasons the judgments of June 12, 1997 and June 16, 1997 *1279 are vacated to the extent that it is based on former LSA-R.S. 9:1923. The case is remanded for the purpose of applying the standard found in LSA-R.S. 9:2005(3). In all other respects the judgment is affirmed.
VACATED AND REMANDED.
NOTES
[1] The judgments that form the basis of this appeal were not rendered against Hugues and he is not a party to this appeal.