MAX N. TOBIAS, JR., Judge.
hThe plaintiff/appellant, Mark J. Titus (“Mr. Titus”), has appealed a judgment that granted a peremptory exception of prescription in favor of defendants /appel-lees, Tim D, Wilson, Sr. and Tim D. Wilson Investigations, Inc. (collectively “Mr. Wilson”), which dismissed Mr. Wilson from *257 this litigation. After reviewing the record and the applicable law, we affirm the judgment of the trial court. .
Mr. Titus filed this suit against Mr. Wilson by way of . an amended petition in August 2013, to recover damages for alleged economic and personal injuries that he suffered as a result of legal malpractice and breach of fiduciary duty. Mr. Wilson is a private investigator hired by Mr. Titus to assist with his criminal defense. . The events surrounding this, lawsuit involve Mr. Titus’ guilty plea in a federal criminal suit and the ensuing forfeiture proceedings of his property. Previously named as defendants-in the original petition, were Paul H. Villalobos, Esq., Titus’ criminal counsel; James M. Ardoin, III, Esq.; and Ardoin Law • PLLC, Titus’ criminal co-counsel. Mr.Titus’ ex-wife, Valerie Titus, was originally a plaintiff, but she was dismissed on a peremptory exception of no right of action. This appeal concerns only Mr. Wilson.
In U.S. v. Titus, 547 Fed.Appx. 464, 465-467, 2013 WL 5997824, *1-2 (5th Cir. 2013), the court succinctly, set forth the facts underlying this case. We adopt them accordingly:
The defendant and appellant, Mark Titus, was the Chief Operating Officer of construction contractor Garner Services, Ltd. (“Garner Services”), which he owned with his partners Ed Garner and QCI Marine Offshore LLC. Titus proved to be an untrustworthy partner. He and his brother-in-law, Dominic Faz-zio, created a series of fictitious invoices from supposed sub-contractors for work that was never performed, for which Garner Services paid approximately $925,000. These.payments went to companies Fazzio controlled, which then passed payments to a company that Titus controlled.
The scheme was discovered and a criminal information, plea agreement, and guilty plea followed. The criminal information charged Titus with one count of conspiracy to commit mail fraud. Titus agreed to plead guilty and waive his right to indictment in exchange for the Government’s foregoing additional charges against him relating to the Garner Services scheme. Under the agreement, Titus committed to: (1) execute a form used to identify assets for forfeiture purposes; (2) forfeit any proceeds from -the Garner Services fraud; (3) submit to law enforcement interviews “whenever and wherever requested;” and (4) be “completely truthful.” The agreement contained a “merger clause” stating that “statements set ■forth above represent defendant’s entire agreement with the Government; there are not any other agreements, letters, or •notations that will affect this agreement.”
According to Titus’s version of the events, sometime before Titus’s plea agreement was signed, Tim Wilson, a private investigator whom Titus had hired, spoke with two of the. Assistant United States Attorneys (“AUSAs”) for the Eastern District of Louisiana on Titus’s behalf. Wilson stated that the AU-SAs promised not to execute on the forfeiture provision of the plea agreement. The story of the secret deal is contested. The two-AUSAs deny having made such a promise.
laTitus then pleaded guilty. In a Rule 11 colloquy, District Judge Ivan Lemelle asked Titus if anyone had promised him anything outside the written plea agreement. Titus replied no. Judge Lemelle then accepted the plea as knowing and voluntary. Sentencing was postponed pending further investigation. Judge Lemelle: “Did anyone promise you anything other than a written plea agree *258 ment with the government to plead guilty?” Titus: “No, sir.”
Several months later, and after beginning to initiate forfeiture proceedings, ■the Government informed Titus through a letter that he was in serious breach of his plea agreement. Titus'was alleged to have engaged in several transactions to shield assets from forfeiture, including having his wife sell his mother-in-law’s real property worth $144,000 for $10. The Government also alleged that he had continued to engage in the bribery and kickback scheme. Because of this alleged breach, the Government stated itself not bound by the plea agreement • and informed Titus that he would be indicted for additional charges. The Government alleged that Titus had also: (1) refused to execute a form used to identify assets for forfeiture purposes; (2) concealed financial information to block forfeiture of certain assets; (3) not been fully forthcoming in meetings with the Government;- and (4) refused to submit to additional interviews. '■
On September 11, 2012, almost a year after pleading guilty, Titus moved to withdraw his guilty plea, his plea agreement, and his waiver of indictment. On ! October 10, the district court denied Titus’s motion and sentenced him to 60 months in prison, three years of supervised release, a $100,000 fine, and $925,320 restitution to Garner Services.
The day after Titus’s sentencing, the Government indicted Titus on additional charges in United States v. Fazzio, No. 2:11-CR-157-HGB-ALC-2 [2011 WL 7100202] (E.D.La. June 24, 2011), a case before District Judge Helen Berrigan. This indictment also charged Fazzio. Titus filed a motion to dismiss the indictment, arguing that filing additional charges violated the Government’s plea agreement. Judge Berrigan denied the motion, stating that Titus “breach[ed] the plea agreement in multiple ways.” Later, three weeks before trial was set to begin, the United States withdrew the case before Judge Berrigan. It is our | understanding that no further charges were brought against Titus'. * * ⅝
The'district court concluded that the plea was “very éxpréssed, very knowing, [and] very voluntary.” It did not err in so holding. Neither did it err in determining that Titus’s secret plea deal was likely fictitious. 'In direct opposition to this later story of an anti-forfeiture deal, Titus told Judge Lémelle when pleading guilty that no one had promised him anything outside the written plea agreement. Cf. United States v. Lampazianie, 251 F.3d 519, 524 (5th Cir.2001) (“[s]olemn declarations in open court carry a strong' presumption of verity”) (alteration in original).
With these facts, we turn to the one assignment of error before us:
Whether the trial court was correct in sustaining Mr. Wilson’s Exception of Prescription finding that the causes of action alleged against Mr. Wilson in Mr. Titus’ Amended Petition for Damages sounded in tort rather than in contract and were therefore prescribed.
Mr. Titus argues that he and Mr. Wilson éntered into a contract' for mandate, which is defined by La. C.C: art. 2989 as a “contract by which' a person, • the principal, confers authority on another person, the mandate, to transact one or more affairs for the principal.”[1] He further claims that this matter concerns Mr. Wilson’s personal breach of fiduciary duty/contract/mandate, a cause of action with a *259 prescriptive period of ten years. See La. C.C. art. 3499. In the alternative, this would be a negligence action governed by La. C.C. art. 3492 that provides a one-year prescriptive period for torts.
Mr. Titus’ amended petition alleges that Mr. Wilson communicated with the United States Attorney’s Office for the Eastern District of Louisiana on Mr. Titus’ behalf, discussing and assisting in the negotiation of the parameters of a |r,cooperation and plea agreement.[2] Mr. Wilson relayed Mr. Titus’ concerns to the government, specifically those regarding forfeiture proceedings. , The record reflects that the two AUSAs with whom Mr. Wilson met were replaced; it is unknown if Mr. Wilson met with the new AUSA(s) to convey Mr. Titus’ concerns.
The government sent a proposed cooperation and plea agreement to Mr. Titus’ attorney who reviewed it on 17 June 2011. His attorney emailed a copy of the plea agreement and factual basis of .the plea to Mr. Titus that same day. Later in the afternoon, as alleged in the amended petition, his attorney represented to Mr. Titus that “there is forfeiture language in [the agreement], but it is not property specific so this leaves us with a- lot of negotiating room. I want to be clear that while there is forfeiture language they are not attaching it to any specific piece of property which will allow us ways to be creative with how they get their money back.” [Emphasis supplied.] According to his amended petition, this assurance gave Mr. Titus the understanding that his property would be secure for his family.
On 20 June 2011, after being asked by the U.S. District Judge if anyone promised him anything other than a written plea agreement with the government to plead guilty, Mr. Titus replied in the negative. Knowing full well that the written plea agreement contained forfeiture language, Mr. Titus voluntarily signed it.
Mr, Titus contends that Mr. Wilson recommended that Mr. Titus execute the plea agreement. He also contends that Mr. Wilson “enhanced his mandatary | ^fiduciary) duty when he guaranteed and warranted” in a letter dated 21 July 2011, “that Mr. Titus’ property was safe from governmental seizure.” This was just over a month after Mr. Titus signed the plea agreement that contained forfeiture language, a fact of which Mr. Titus was well aware.
The trial court held that Mr. Titus and his wife had notice of the forfeiture proceedings on 3 June 2012.
The amended petition naming Mr. Wilson as a party-defendant was filed on 31 July 2013.
In Brown v. Schreiner, 10-1436, pp. 4-5 (La.App. 4 Cir. 11/9/11), 81 So.3d 705, 708, we stated:
' In reviewing a peremptory exception of prescription, an appellate court will' •review the entire record to determine whether the trial court’s finding of fact was manifestly erroneous. Katz v. Allstate Ins. Co., 2004-1133, p. 2 (La.App. 4 Cir. 2/2/05), 917 So.2d 443, 444. When evidence is received on the trial of the exception, the factual conclusions of the trial court are reviewed by the appellate court under the manifest error-clearly wrong standard. Id. Louisiana law pro-, vides no prescriptive period«specifically *260 applicable to a declaratory judgment action. Instead, courts must look to the cause of action that forms the underlying basis of the request in determining which prescriptive period applies. dela Yergne v. dela Yergne, 99-0364, p. 8 (La.App. 4 Cir. 11/17/99), 745 So.2d 1271, 1275. [Emphasis supplied.]
Mr. Titus maintains that his cause of action against Mr. Wilson is “breach of fiduciary duty,” (a ten-year prescriptive period), while the trial court found that it was a suit against a fiduciary for negligence (a one-year prescriptive period).
“An agent is one who acts for or in the place of another by authority from the latter. An agency relationship may be created by express appointment of a man-datary under LSA-C.C. art. 2985 or by implied appointment arising from 17apparent authority.” Breeden v. Lybrand, 04-1340, p. 3 (La.App. 4 Cir. 2/22/06), 927 So.2d 451, 454, quoting Barrilleaux v. Franklin Foundation Hospital, 96-0343, pp. 6-7 (La,App. 1 Cir. 11/8/96), 683 So.2d 348, 353.
In Harrison v. Novelaire Technologies, L.L.C., 08-157, p. 10 (La.App. 5 Cir. 8/19/08), 994 So.2d 57, 64-65, the court stated:
A cause of action for breach of fiduciary duty requires proof of fraud, breach of trust, or an action outside the limits of the fiduciary’s authority. Gerdes v. Estate of Cush, 953 F.2d 201, 205 (5th Cir.1992); Beckstrom v, Parnell, 97-1200 (La.App. 1 Cir. 11/6/98), 730 So.2d 942, 947-48; Sampson v. DCI of Alexandria, 07-671 (La.App. 3 Cir. 10/31/07), 970 So.2d 55, 61.
Reviewing the amended petition, we find no allegations of fraud, breach of trust, or actions' by Mr. Wilson outside the limits of his alleged authority. “Fraúd1 is a misrepresentation or a suppression of the truth made with the intention either to obtain an unjust-advantage for one party or to cause a. loss or inconvenience to the other. Fraud may also result from silence or inaction.” La. C.C. art. 1953. In order to bring a cause of action for fraud, the following three elements must be alleged: “(1) a misrepresentation of material fact, (2) made with the intent to deceive, (3) causing justifiable reliance with resultant injury.” Chapital. v. Harry Kelleher & Co., 13-1606, p. 13 (La.App. 4 Cir. 6/4/14), 144 So.3d 75, 86. Moreover, fraud must be alleged with particularity. La. C.C.P. art. 856 (providing that “[i]n pleading fraud or mistake, the circumstances constituting fraud or mistake shall be alleged with particularity”). Chapital, 13-1606, pp. 13-14, 144 So.3d at 86.
Mr. Wilson was retained by Mr. Titus to prevent the seizure of his property. In his amended petition, Mr. Titus states that “Mr. Wilson faithfully relayed all of Mr. Titus’ concerns” to the AUSAs when discussing the parameters of the plea agreement. That is what he was charged to do. Mr. Titus knew that the plea ^agreement contained a provision granting-authority to the government to institute forfeiture proceedings. In no way do Mr. Wilson’s actions rise to the level of fraud. If in fact Mr. Wilson is hable for anything, it would be as a fiduciary that was negligent, or- stated another way, if the allegations create any cause of action it would be grounded in negligence. That cause of action is prescribed pursuant to the La. C.C. art. 3492 one-year prescriptive period.
Based on the foregoing, we affirm the judgment of the trial court granting Mr. Wilson’s peremptory exception of prescription.

AFFIRMED.

. Mr. Wilson was paid well over $100,000 for the work he did for Mr. Titus.

. The claim for unauthorized practice of law claim asserted by Mr. Titus against Mr. Wilson was dismissed because Mr. Wilson is not an attorney. However, it is puzzling, maybe disturbing, that a layperson was paid to do what is normally considered “lawyer work,” and that the U.S. Attorney’s Office knowingly negotiated with a non-lawyer on behalf of a criminal defendant who was represented by counsel.